1   PETER PROWS, CBN 257819
    BRISCOE IVESTER & BAZEL LLP
2   155 Sansome Street, Seventh Floor
    San Francisco, CA 94104
3   Telephone: (415) 402-2700
    Facsimile:  (415) 398-5630
4   Email:  pprows@briscoelaw.net

5   BRUCE J. HIGHMAN, CBN 101760
    LOUIS A. HIGHMAN, CBN 61703
6   HIGHMAN & HIGHMAN
    A Professional Law Association
7   870 Market Street, Suite 467
    San Francisco, CA 94102
8   Telephone: (415) 982-5563
    Facsimile:  (415) 982-5202
9   Email: bruce.highman@highmanlaw.com

10  NICHOLAS J. NEIDZWSKI, CBN 273020
    GORDON CAREY (*pro hac vice*)
11  ANDERSON CAREY WILLIAMS
    & NEIDZWSKI, PLLC
12  1501 Eldridge Avenue
    Bellingham, WA 98225
13  Telephone: (360) 671-6711
    Facsimile:  (360) 647-2943
14  Email: nick@boatlaw.com

15  Attorneys for Plaintiff and Relator
    MATTHEW ZUGSBERGER

16

UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA

17

SAN FRANCISCO-OAKLAND DIVISION

18

| | |
|---|---|
| 19   UNITED STATES ex rel. MATTHEW ZUGSBERGER and MATTHEW <br> 20   ZUGSBERGER, <br><br> 21          Plaintiffs, <br><br> 22    -v- <br><br> 23   T. L. PETERSON, INC., a California corporation, *in personam*; GALINDO <br> 24   CONSTRUCTION COMPANY, INC., a California corporation, *in personam*; LISA M. <br> 25   GALINDO, an individual, *in personam*; DON RON GALINDO, an individual, *in personam*; <br> 26   DOES 1-10, inclusive, <br><br> 27          Defendants. | No.  CV-17-2277 KAW <br><br> THIRD AMENDED COMPLAINT |

28

1

1.      Defendant T. L. Peterson, Inc. ("Peterson") and Galindo Construction Company, Inc. ("Galindo") were paid $1.6 million by the United States to dispose of certain debris at a "Class I" landfill authorized to receive toxic materials.  But Peterson and Galindo did not dispose of that debris at a Class I landfill; they took the $1.6 million, but disposed of the debris not at a Class I landfill but at lesser sites not authorized to receive toxic materials.  Relator Matthew Zugsberger ("Zugsberger") brings his False Claims Act claim, on behalf of the United States, to remedy defendants' knowingly false or fraudulent claims.

2.      Zugsberger is a seaman and brings his claims for Jones Act Negligence, Unseaworthiness, Maintenance, Cure, and Unearned Wages, and Negligence pursuant to the provisions of 28 U.S.C. § 1916 without prepayment of fees and costs and without deposit of security therefore.

**PARTIES**

3.      Peterson is and at all relevant times has been a California company doing business in good standing in California.

4.      Galindo is and at all relevant times has been a California company doing business in good standing in California.

5.      Ronald and Lisa Galindo are and at all relevant times were individuals and citizens of California.

6.      Plaintiff United States is a sovereign on whose behalf Zugsberger may bring the first claim in this action, per 31 U.S.C. § 3730(b)(1), or which may elect to pursue the first claim in this action on its own behalf, per 31 U.S.C. § 3730(a).

7.      At all times mentioned herein, the barge [VESSEL], USCG No. _____ (hereinafter "vessel"), was an American flag industrial vessel operating upon the navigable waters of the United States.

8.      Zugsberger is an individual and a citizen of California.

9.      Zugsberger is informed and believes that each Defendant is and has been the agent of each and every other Defendant, and that all acts of any Defendant alleged in this compliant were

performed within the scope and authority of that agency, and were approved of and ratified by each and every other Defendant.

### JURISDICTION

10.    This court has original jurisdiction under 28 U.S.C. § 1331 because the first through fifth, twenty-seventh and twenty eighth claims for relief arise under the laws of the United States, including 31 U.S.C. §§ 3729, et seq., as to the first claim for relief.  This court also has jurisdiction over the second through fifth claims for relief pursuant to 46 U.S.C. § 30104 and 28 U.S.C. § 1333.

11.    This court has supplemental jurisdiction under 28 U.S.C. § 1367 over the remaining claims for relief which are brought under California law.

### VENUE

12.    Venue is proper in the Northern District of California under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

### INTRADISTRICT ASSIGNMENT

13.    Intradistrict assignment to the San Francisco or Oakland division is proper because this action arises from Marin County.

### FACTS

14.    Peterson was awarded a contract ("Contract") by the United States, through the National Park Service, no. P16PC00287, to dispose of debris from Drakes Estero, in Marin County, California, at a "Class I Landfill" capable of receiving toxic materials, in exchange for $1.6 million.

15.    The Contract's requirement to dispose of this debris at a Class I landfill was material.

16.    Galindo is Peterson's subcontractor on the Contract.

17.    Although Peterson and Galindo Construction were paid under the Contract to dispose of this debris at a Class I landfill, they did not dispose of this debris at a Class I landfill. They knowingly disposed of the debris at lesser sites not authorized to receive toxic materials.

18.    At all material times hereto, defendants Galindo Construction and Ronald Galindo owned defendant [VESSEL].

19.      At all material times hereto, defendants Galindo Construction, Ronald Galindo, and Peterson manned, operated, maintained, and controlled the vessel.

20.      At all material times hereto, Zugsberger was in the employ of defendants Galindo Construction and Ronald Galindo as a seaman, commercial diver, and member of the crew in the service of the vessel.

21.      From in or around August 2016 through in or around November 2016, during which time period Zugsberger was employed by Galindo Construction and Ronald Galindo as a commercial diver aboard the vessel, Zugsberger was required by Galindo Construction, Ronald Galindo, and Peterson to dive in various locations throughout the Drakes Estero in the Point Reyes National Seashore of Marin County, California.

22.      Among other diving responsibilities required of Zugsberger from in or around August 2016 through in or around November 2016, Zugsberger was required by Galindo Construction, Ronald Galindo, and Peterson to frequently dive to assist in the pulling and removal of numerous oyster racks located throughout the Drakes Estero.

**FIRST CLAIM**:
**FALSE CLAIMS ACT**
**Against Peterson and Galindo Construction**

23.      Plaintiff incorporates and realleges the allegations contained in paragraphs 1 through 17 set forth above.

24.      Peterson and Galindo Construction presented a claim for payment or approval to the United States under the Contract to dispose of debris at a Class I landfill.  This was false or fraudulent because they knowingly did not dispose of the debris at a Class I landfill, but rather at lesser sites not authorized to receive toxic materials.

25.      Peterson and Galindo Construction made, used, or caused to be made or used, a record or statement material to a claim for payment under the Contract for disposal of debris at a Class I landfill.  This was false or fraudulent because Defendants knowingly did not dispose of the debris at a Class I landfill, but rather at lesser sites not authorized to receive toxic materials.

26.      Peterson and Galindo Construction are liable under the False Claims Act.

**SECOND CLAIM:**
**JONES ACT NEGLIGENCE**
**Against Galindo Construction, Ronald Galindo, and the [VESSEL]**

27.    Plaintiff incorporates and realleges the allegations contained in paragraphs 1 through 22 set forth above, and in paragraph 44 below. As indicated in paragraph 44 below, Mr. Zugsberger does not currently know the name of the [VESSEL] and therefore sues the [VESSEL] as Doe 1.

28.    Plaintiff alleges upon information and belief, that from in or about August 2016 through November 2016, while Plaintiff was engaged in the course of his duties in the service of said vessel, Galindo Construction, Ronald Galindo, and Doe 1 [VESSEL] were negligent in, among other things:

a)    causing, allowing, and permitting the said vessel and her appurtenances to be operated in such a manner as to unreasonably endanger Plaintiff's safety;

b)    causing, allowing, and permitting the vessel and her appurtenances to be in a dangerous, defective and hazardous condition;

c)    failing to warn Plaintiff of impending dangers;

d)    failing to provide a seaworthy vessel and a safe method of operation;

e)    failing to provide Plaintiff with safe places in which to work, including but not limited to safe areas to dive which were free or protected from chemical exposure;

f)    failing to promulgate and enforce proper and safe rules of seamanship in the supervision and conduct of the work;

g)    failing to provide sufficient breaks between dive shifts and sufficient divers and/or dive crews;

h)    failing to supply proper gear and equipment, and to inspect and maintain the same in proper order, including but not limited to the

failure to supply dive equipment to protect Plaintiff from various

chemicals and harmful substances;

and otherwise acted so negligently as to cause Plaintiff to be repeatedly exposed to various

chemicals and harmful substances resulting in severe injuries, including but not limited to

chemical burns.

29.     As a result of said incidents, Plaintiff was hurt and injured in his health, strength,

and activity, sustaining injury to his body and shock and injury to his nervous system and person,

all of which said injuries have caused and continue to cause Plaintiff great mental, physical and

nervous pain and suffering, and Plaintiff alleges upon information and belief that said injuries

will result in some permanent disability to Plaintiff, all to his general damage according to proof.

30.     As a further result of said incidents, Plaintiff was required to and did employ

physicians and other health care providers for medical examination, care and treatment of said

injuries, and Plaintiff alleges upon information and belief that he may require such services in the

future.  The cost and reasonable value of the health care services received and to be received by

Plaintiff is presently unknown to him, and Plaintiff prays leave to insert the elements of damages

in this respect when the same are finally determined.

31.     As a further result of said incidents, Plaintiff has suffered and will continue in the

future to suffer loss of income in a presently unascertained sum, and Plaintiff prays leave to

insert the elements of damage in this respect when the same are finally determined.

**THIRD CLAIM:**
**UNSEAWORTHINESS**
**Against Galindo Construction, Ronald Galindo, and Doe 1 [VESSEL]**

32.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 22

and paragraphs 27 through 31 set forth above and paragraph 44 below.

33.     In or about August 2016 through November 2016, while Plaintiff was engaged in

the course of his duties in the service of said vessel, the vessel was unseaworthy in that, among

other things:

a)     said vessel and her appurtenances were being operated in such

a manner as to unreasonably endanger Plaintiff's safety;

b)      said vessel and her appurtenances were in a dangerous,
defective and hazardous condition;

c)       the places where Plaintiff was required to work were unsafe,

d)      sufficient and safe gear and equipment in proper working order
were lacking;

e)      work in progress was being conducted by unsafe methods
without adequate crew and breaks between diving shifts;

and the said vessel was otherwise so unseaworthy as to cause Plaintiff to be repeatedly exposed to various chemicals and harmful substances resulting in severe injuries, including but not limited to chemical burns.

**FOURTH CLAIM:**
**MAINTENANCE, CURE, AND UNEARNED WAGES**
**Against Galindo Construction, Ronald Galindo, and Doe 1 [VESSEL]**

34.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 22 and paragraphs 27 through 33 set forth above.

35.     In or about August 2016 through November 2016, Plaintiff became repeatedly injured and disabled in the service of the vessel.

36.     Upon Plaintiff becoming injured and disabled as aforesaid, it became the duty of Galindo Construction, Ronald Galindo, and Doe 1 [VESSEL] to pay to Plaintiff the expenses of his maintenance and cure, as well as his wages to the end of the period of employment for which Plaintiff was engaged, but Galindo Construction and Ronald Galindo unreasonably, willfully, and wantonly failed, delayed, and neglected to make full payment thereof, despite knowledge of Plaintiff's continuing disability.

37.     By reason of the premises, Plaintiff has been damaged in sums according to proof for maintenance and cure and unearned wages, the precise amounts of which are presently unascertained, and Plaintiff prays leave to insert the elements of damages in this respect when the same are finally determined.

38.     By reason of said neglect, Plaintiff was obliged to engage the services of counsel and has incurred and will continue to incur attorneys' fees and expenses for which Plaintiff is entitled to recover.

39.     The willful and wanton disregard of the maintenance and cure obligation of Galindo Construction, Ronald Galindo, and Doe 1 [VESSEL] also entitles Plaintiff to an award of punitive damages.  Plaintiff prays for leave to amend at trial to conform to the proof.

**FIFTH CLAIM:**
**NEGLIGENCE**
**Against Peterson**

40.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 22 and paragraphs 27 through 33 set forth above.

41.     Peterson owed Plaintiff a duty to use due and reasonable care and caution in the operation, surrounding work environment, and scheduling of Plaintiff's work during August 2016 through November 2016, while Plaintiff was engaged in the course of his duties in the service of said vessel.

42.     Peterson was negligent in that, among other things:

a)      causing, allowing, and permitting the said vessel and her appurtenances to be operated in such a manner as to unreasonably endanger Plaintiff's safety;

b)      causing, allowing, and permitting the vessel and her appurtenances to be in a dangerous, defective and hazardous condition;

c)      failing to warn Plaintiff of impending dangers;

d)      failing to provide a safe method of operation;

e)      failing to provide Plaintiff with safe places in which to work, including but not limited to safe areas to dive which were free or protected from chemical exposure;

f)      failing to reasonably oversee and verify that work was being performed correctly and safely;

g)      failing to provide sufficient breaks between dive shifts and sufficient divers and/or dive crews;

h)      failing to supply proper gear and equipment, and to inspect and maintain the same in proper order, including but not limited to the failure to supply dive equipment to protect Plaintiff from various chemicals and harmful substances;

and otherwise acted so negligently as to cause Plaintiff to be repeatedly exposed to various chemicals and harmful substances resulting in severe injuries, including but not limited to chemical burns.

### SIXTH CLAIM:
### FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF LABOR CODE § 1194
### Plaintiff is Matthew Zugsberger
### Defendants are Defendants and Each of Them Other than Doe 1

43.     Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13 set forth above.

44.     The true names and capacities, whether individual, corporate, partnership, associate, or otherwise, of Defendants sued herein as Does 1-10, inclusive, are unknown to Plaintiff Zugsberger, who therefore sues said Defendants by such fictitious names and will pray leave to amend this complaint together with appropriate charging allegations when the same have been ascertained. Plaintiff Zugsberger is informed and believes and thereupon alleges that each of said fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff Zugsberger's damages as herein alleged, were proximately caused by their conduct. Defendant Doe 1 is the [VESSEL] and is not a party to this cause of action.

45.     The U.S. National Park Service awarded T. L. Peterson a contract to remove structures and debris of an oyster farm that had been shut down at Drake's Estero at Point Reyes National Seashore in Marin County, California. T. L. Peterson in turn subcontracted much of this work to Galindo Construction. Galindo Construction employed Mr. Zugsberger at Drake's Estero on this project from August 14, 2016 through November 14, 2016, when it terminated him through a letter mailed to his home which he received on November 15, 2016. Mr. Zugsberger is informed and believes that Defendants' work at Drake's Estero continued until in or about April or May 2017. Mr.

9

1
2
3
4
5
6
7
8
9
10

Zugsberger's work for Defendants there would have continued until then had he not been terminated. Mr. Zugsberger's work was mostly to dive beneath the water of Drake's Estero, remove the structures and debris from underwater and haul them to a barge on the water's surface. Mr. Zugsberger was the only Diver on the Drake's Estero project during his three months of employment at Drake's Estero. During the entirety of Mr. Zugsberger's employment and continuing through the present, Lisa M. Galindo has been the president of Galindo Construction Company, Inc., and her husband, Don Ron Galindo, Jr., has been a managing agent, officer, and/or director of this Company. Mr. and Mrs. Galindo are the owners of Galindo Construction. Thus, under Labor Code § 558.1, Mr. and Mrs. Galindo have liability for the violations set forth herein of Labor Code § 1194, and the violations set forth in subsequent claims under Labor Code §§ 203, 226, 226.7, 1194, 1198 and 2802.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

46.    Mr. Zugsberger should also be considered an employee of T. L. Peterson during the entire time he was an employee of Galindo Construction for reasons that include without limitation that T. L. Peterson had the right to control Mr. Zugsberger in his work, and had the contractual and legal duty to see that its subcontractor, Galindo Construction, complied with employment and other statutes, rules, and regulations.  T. L. Peterson's onsite superintendent, Mark Cassady, oversaw Galindo's work on the project. He often gave orders directly to Mr. Zugsberger and the other Galindo Construction employees at the beginning of the day as to what they should do that day, or at the end of the day as to what they should do the next day. Mr. Cassady also met daily with Mr. Galindo. Mr. Zugsberger is informed and believes that Mr. Cassady directed Mr. Galindo as to what work the Galindo employees should be doing. Additionally, T. L Peterson oversaw and had the right to control workplace safety and health matters for all workers on the site, including without limitation Mr. Zugsberger and the other employees of Galindo Construction. T. L. Peterson drafted most of the policies and other important documents relating to workplace safety and health that covered Mr. Zugsberger and the other Galindo employees. Mr. Cassady, T. L. Peterson's onsite superintendent, was the Onsite Safety Representative for all employees on the site, including without limitation, Mr. Zugsberger and the other Galindo employees, and conducted safety meetings attended by them.

27
28

47.    The contract that T. L. Peterson had with the National Park Service at Drake's Estero on which Galindo Construction was the subcontractor and on which Mr. Zugsberger worked was a

public works contract and thus covered by the federal Davis Bacon Act under which workers received prevailing wage pay at the union rate.  Before Mr. Zugsberger accepted employment with Galindo Construction, Mr. Galindo told him that he'd be a Diver and that it would be a public works contract. Mr. Galindo and Mr. Zugsberger agreed that Mr. Zugsberger would be doing the work through Mr. Zugsberger's diving company, NorCal SubSea, a corporation. Mr. Zugsberger then would have done the diving work as an employee of NorCal SubSea which would have been a subcontractor of Galindo Construction, the subcontractor of T. L. Peterson. NorCal SubSea would have had two other employees on the diving team for the Drake's Estero project also. Federal regulations effectively required three persons on a commercial diving team. Mr. Zugsberger and the other members of the diving team would have been paid the prevailing wage for Divers by his company which would have included the cost of the prevailing wage to Mr. Zugsberger and the other members of the diving team in its bills to Galindo Construction. Based on these representations, Mr. Zugsberger quit his job in New Jersey and moved to California to work for Defendants through his diving company. Before Mr. Zugsberger began work, Mr. Galindo complained about the cost of having the diving work done by a three-person diving team at NorCal SubSea. He represented that Mr. Zugsberger could be a Diver as an employee of Galindo Construction rather than NorCal SubSea, and other employees at Galindo Construction could serve with Mr. Zugsberger as the diving team. Mr. Galindo also represented that Mr. Zugsberger's company, NorCal SubSea, supposedly would have to pay for a $5 million environmental insurance policy if Mr. Zugsberger did the diving through NorCal SubSea rather than as an employee of Galindo Construction. Based on these representations, Mr. Zugsberger agreed with Mr. Galindo to do the diving work as a Galindo Construction employee.

48.     The first day that Mr. Zugsberger worked on the Drake's Estero project for which he was paid was August 14, 2016. That was the first day of actual work on Drake's Estero. However, beginning in July 2016 and before August 14, 2016, but after he agreed to being an employee, Mr. Zugsberger performed about 40 hours of work for Defendants at their request to prepare for the Drake's Estero project, including without limitation writing a safe practices manual for the diving, researching where supplies, tools and equipment could be purchased and how much they would cost, and also researching where employees could be housed while employed on the project. Mr.

1   Zugsberger did this work at his house. In violation of the minimum wage requirement in Labor Code
2   § 1194, Defendants never paid Mr. Zugsberger anything for these approximately 40 hours of work.

3       49.     The first day that Mr. Zugsberger and other Galindo Construction employees actually
4   worked in Drake's Estero on the Drake's Estero project was August 14, 2016. On that first day, a
5   reporter and a number of Park Service officials (probably about ten or more) were present, so
6   defendants were motivated to be on their best behavior. That day, Mr. Zugsberger was allowed to use
7   air when he dove. Mr. Zugsberger did not dive during the remainder of the first pay period. He
8   received his paycheck for the first pay period on or about September 2, 2016. It provided him Diver
9   pay for August 14. Beginning on or about September 6, Mr. Zugsberger started to dive every day, but
10  Mr. Galindo ordered him not to use air when he dove, so Mr. Zugsberger didn't use air. Mr.
11  Zugsberger said it was unsafe not to use air. Mr. Zugsberger reasonably believed he might not be able
12  to get to the surface in time and might drown without air, for example, if he got snagged on something
13  in the water and couldn't free himself in time, if something from the company's barge from which
14  he dove fell on him and injured him or knocked him out, or if he got a cramp or had some other
15  medical condition. Mr. Galindo said that the excavator on the barge might cut the umbilical which
16  ran from the air compressor on the barge to the Diver's mouth. That was highly unlikely. If it
17  happened, Mr. Zugsberger had a backup portable tank with him that he could use. And in the
18  extremely unlikely event that the backup tank wasn't sufficient, then Mr. Zugsberger would be
19  without air which was what he was anyway since Mr. Galindo wouldn't let him use the air. When Mr.
20  Zugsberger got his second pay check on or about September 16, 2016, he saw that he was not paid
21  Diver pay even though he was diving, albeit without air. The reason he was not being paid Diver pay
22  was that he was diving without air. At some point, Mr. Galindo even told Mr. Zugsberger that he
23  didn't want Mr. Zugsberger to use air because he didn't want to pay him Diver pay.

24      50.     Mr. Zugsberger complained to Mr. Galindo, Mr. Cassady, the National Park Service,
25  and the Department of Interior, Office of Inspector General, about not being paid Diver pay since he
26  was diving, and was not using air only because Mr. Galindo told him not to use it, which was unsafe.
27  Nonetheless, Mr. Zugsberger's pay was not increased and neither T. L. Peterson nor Galindo took any
28  action to increase his pay while he was employed from August 14-November 14, 2016. On or about

November 14, 2016, he filed a written complaint with the Wage and Hour Division of the U.S. Department of Labor about his pay. The Wage and Hour Division determined that his proper classification was Pile Driver. Mr. Zugsberger then received back pay from Galindo Construction through the Department of Labor in or about June 2017 which Mr. Zugsberger is informed was supposed to equal the difference between the pay he had received as a Group 3 Laborer and the pay he would have received if he had been paid as a Pile Driver. However, no interest was paid on the back pay.

51.    The California Lands Commission has informed Mr. Zugsberger that Drake's Estero where he worked is not a federal enclave, that the State maintains full civil jurisdiction over Drake's Estero. Therefore, Mr. Zugsberger's claims under California law are not barred by the federal enclave doctrine.

52.    When the prevailing wage is required to be paid to employees under Davis Bacon, it is a minimum wage, and failure to pay the entire prevailing wage owed is a violation of Labor Code § 1194. (*Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.* (2002) 102 Cal.App.4th 765.) Thus, Defendants violated Labor Code §1194 by failing to pay Mr. Zugsberger Pile Driver wages.

53.    As the proximate result of Defendants' Labor Code § 1194 minimum wage violations, Mr. Zugsberger has suffered damages to be shown according to proof, and is entitled to an award therefor, including without limitation for: (1) the minimum wage for the approximately 40 hours of preparatory work he did after agreeing to be an employee but before August 14, 2016, plus prejudgment interest thereon, plus as liquidated damages an additional amount equal to the minimum wage and prejudgment interest thereon; and (2) prejudgment interest through in or about June 2017 on the difference between what he was paid on his pay days while he was employed by Defendants and what he would have been paid had he been paid as a Pile Driver.

54.    Mr. Zugsberger is informed and believes that after he was terminated, another employee named Dave Shultz did the diving work that Mr. Zugsberger did, and like Mr. Zugsberger was only paid Group 3 Laborer pay, whereas he should have been paid at least Pile Driver pay. Thus, Defendants also violated the Labor Code § 1194 minimum wage requirement as to Mr. Shultz.

55.     Mr. Zugsberger sent a letter on September 11, 2017, and an amended letter on October 30, 2017, to the California Labor and Workforce Development Agency (LWDA), with both letters being sent electronically through the LWDA's website and setting forth, inter alia, the Labor Code § 1194 minimum wage violations set forth herein and the facts and theories to support the violations. The 65th day after October 30, 2017 is January 3, 2018. Mr. Zugsberger has not received any notice back from the LWDA as to whether it intends to investigate the matter. Therefore, Mr. Zugsberger has exhausted his administrative remedies under the Labor Code Private Attorneys General Act (PAGA).

56.     Civil monetary penalties pursuant to PAGA should be awarded according to proof to Mr. Zugsberger and Mr. Shultz against whom Defendants violated the minimum wage requirement in Labor Code § 1194.

57.     As the further proximate result of Defendants' minimum wage violations of  Labor Code § 1194, Mr. Zugsberger has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants and each of them.

**SEVENTH CLAIM:**
**BREACH OF CONTRACT**
**Plaintiff is Matthew Zugsberger**
**Defendants are Defendants T. L. Peterson, Galindo Construction, and Does 2-10, inclusive**

58.     Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13 and 44-51 set forth above.

59.     On November 1, 2016, Mr. Zugsberger drove to work. His car was working perfectly. When Mr. Zugsberger returned to his car that night and turned it on, all the warning lights lit up. He could only drive the car in first and  second gears. He drove the car to a shop in Petaluma. There a man  hooked up a computer to the car and ran a diagnostic code check which showed that an overdrive solenoid in the transmission had shorted out. Mr. Zugsberger called Mr. Galindo and informed him of the problem and that he was going to try to fix it. Mr. Galindo said that if Mr. Zugsberger couldn't fix it, then Mr. Galindo, would need to find a replacement for Mr. Zugsberger

while Mr. Zugsberger was unable to get to work. Mr. Zugsberger then bought an overdrive solenoid which he installed. He also flushed out the transmission. But these steps did not correct the problem, so he had his car towed to his home. The problems had been exacerbated by his having driven to Petaluma and were more than just the overdrive solenoid. He called Mr. Galindo again that night, November 1, and told him he could not fix the problem and he wouldn't be at work the next day. Mr. Galindo quickly told Mr. Zugsberger his replacement was on his way and to call him on Friday, which was November 4.

60.     The next day, Wednesday, November 2, 2016, Mr. Zugsberger texted Mr. Galindo at 5:50 p.m., "My pcm is fried. I'll get a new one Friday." The next day, Thursday, November 3, Mr. Galindo texted back, "Roger." Late on November 3, Mr. Zugsberger was able to borrow a car from the father of his friend which he could use to drive to work each day until his own car was fixed. He drove it on Friday, November 4, in the afternoon to work to pick up his check. Mr. Galindo saw the car which he had not seen Mr. Zugsberger drive before. Mr. Zugsberger told Mr. Galindo that he had gotten a new car.[1] Mr. Galindo told him he was off the whole of the next week because his replacement had insisted on working through then. Mr. Zugsberger then asked if he should come back to work on November 14. Mr. Galindo said, "Yes." Mr. Zugsberger asked, "What time?" He asked that because their start time varied each day. Mr. Galindo said to call him on Saturday, November 12. Mr. Zugsberger called Mr. Galindo on November 12 and left him a voicemail. He then texted him, "What time Monday?" Mr. Galindo did not respond. Therefore, Mr. Zugsberger texted Mr. Galindo again on Sunday afternoon, November 13, "No work Monday?" He also called Mr. Galindo on Sunday, November 13. Again, Mr. Galindo did not respond. Mr. Zugsberger thus didn't have a start time for Monday, November 14, and reasonably believed that Mr. Galindo did not want him to come to work.

61.     On Tuesday, November 15, 2016, Mr. Zugsberger received in the mail a letter dated November 14, 2016 signed by Lisa Galindo which states:

On 11/1/16 you called and stated that you had car trouble and would not be able to get to

---

[1]"New" as used here means a car Mr. Zugsberger hadn't driven before. The car was in fact over 15 years old..

work the next day. You also stated that you did not have the money to fix it. You have not reported to work since then, and have not updated us as to when, or if, your car would be fixed. You have created a hardship on Galindo Construction by not reporting to work and have not fulfilled your obligations to the company as an employee, therefore, we are terminating your employment, effective immediately.

The reasons given in the letter for terminating Mr. Zugsberger are false. His November 2, 2016 text to Mr. Galindo indicated he would have the car fixed by Friday, November 4. On Friday, November 4, Mr. Galindo saw him driving a car he hadn't driven before, and Mr. Zugsberger told Mr. Galindo he had gotten a new car. It was Mr. Galindo who told him not to show up the whole of the week for November 7-11, and who then wouldn't return his calls or texts as to what time he should report on November 14.

62. After his termination, Mr. Zugsberger learned that there was no replacement, that Defendants simply had Mr. Shultz do the diving, again without air. Moreover, a report of the Department of the Interior-Office of Inspector General states that Jack Williams, the Project Manager for the National Park Service at Drake's Estero, told the Department of Interior, Office of Inspector General, that he had been informed on November 7, 2016, that Mr. Zugsberger would not be returning to the job.

63. Defendants employed Mr. Zugsberger on the Drake's Estero project.mainly to work in the water rather than onshore. His employment contract was oral and included express and implied terms and was for the length of time that there was work in the water to do on the Drake's Estero project. The work in the water continued through sometime in April 2017 so Mr. Zugsberger's employment contract was for a specified term which ended in April 2017. Since the contract was for a specified term, under Labor Code § 2924, Mr. Zugsberger could be terminated before the end of the term in April 2017 only "in case of any willful breach of duty by the employee in the course of his employment, or in case of his habitual neglect of his duty or continued incapacity to perform it." As alleged in paragraphs 59-62, Mr. Zugsberger did not willfully breach any duty in the course of his employment, habitually neglect his duty, or have a continued incapacity to perform it. Therefore, Defendants' refusal to let Mr. Zugsberger work at any time on or after November 7, 2016, and their formal termination of him on November 14, 2016 breached the contract.

64.     As indicated above in paragraph 47, before Mr. Zugsberger agreed to work as an employee with Galindo Construction, Mr. Galindo told him that he'd be a Diver and that it would be a public works contract. Mr. Zugsberger accepted employment based on this representation. Therefore, the oral contract between Mr. Zugsberger and Defendants provided that he would receive Diver pay. This oral contract was breached when without any notice, he was paid Group 3 Laborer pay rather than Diver pay.

65.     Wages include benefits that are promised to the employee. During the period when Mr. Zugsberger was doing work from his house to prepare for the Drake's Estero project, as set forth in paragraph 48 above, Mr. Galindo told him to look around for housing near Drake's Estero for himself and the other employees who were going to be working at Drake's Estero who were going to be directly employed by Galindo Construction. The Galindo crew at that time just consisted of Mr. Galindo, Mr. Zugsberger, and a third employee named John Moats. Later, in or about October 2016, a fourth employee named Dave Shultz was hired by Mr. Galindo. Mr. Zugsberger located three houses within about a 20-25 minute drive from Drake's Estero which could be rented. Mr. Galindo said they were too far away. Mr. Zugsberger said that to stay closer, they would have to stay at the Tomales Bay Resort. Mr. Galindo said they might end up doing that. Mr. Galindo told Mr. Zugsberger, "Don't worry about housing. I'll worry about it. I've got it covered." Mr. Zugsberger went to work for Galindo Construction at Drake's Estero in reliance upon this representation.

66.     Mr. Zugsberger said that to help Mr. Galindo out, he could stay a few weeks or so at his father-in-law's house which was in Stinson Beach, and that he could then stay a few days at a friend's house in Cloverdale. Mr. Zugsberger's last night in Cloverdale was September 8, 2016. He told Mr. Galindo on or about September 8 that he would now need the housing that Mr. Galindo had promised. Mr. Galindo said, "Weren't you going to be staying in Cloverdale?" and "I don't have a budget to provide you with housing." Mr. Zugsberger complained to Mr. Galindo about not being provided with housing, but to no avail.

67.     Mr. Zugsberger then had to pay for his own housing for the remainder of his employment, and ultimately wound up commuting three hours or so each way between Drake's Estero and his house in Upper Lake in Lake County. It should be noted that when Galindo hired another

employee named Dave Shultz in or about October 2016, he supplied Mr. Shultz also with lodging at the Tomales Bay Resort. It should also be noted that Galindo often paid for the dinners of its employees who it put up at Tomales Bay Resort. Moreover, T. L. Peterson had three employees at Drake's Estero, each of whom was provided with housing at Tomales Bay Resort. Thus, Defendants' policy and practice was to provide housing for their employees who were working at Drake's Estero. Mr. Zugsberger was the only employee at Drake's Estero who wasn't provided with housing, something which Mr. Galindo had promised him before he came to work at Drake's Estero. Based on Defendants' policy and practice and their promise to provide Mr. Zugsberger with housing, their refusal to provide it breached their contract with Mr. Zugsberger.

68.     If Mr. Zugsberger had been put up at the Tomales Bay Resort like the other employees were, then if his car still had stopped working, as it did on the night of November 1, he could have driven to work with one of the other employees, and he could even have walked. Thus, he wouldn't have missed a single day of work which means he wouldn't have been terminated since the reason given for his termination was his missing work.

69.     As the proximate result of Defendants' breaches of contract, Mr. Zugsberger has suffered damages to be shown according to proof, and is entitled to an award therefor, together with prejudgment interest thereon, including without limitation for: (1) the difference between the pay he would have received as a Diver and the pay he actually received; (2) the value of the lodging and meals that he would have received if he had been put up at Tomales Bay Resort like the other employees, plus the difference between his actual commuting expense and what it would have been had he stayed at Tomales Bay Resort; and (3) the wages and benefits he lost after November 1, 2016.

70.     As the further proximate result of Defendants' failure to provide him with Diver pay and housing, Mr. Zugsberger has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants T. L. Peterson, Inc., Galindo Construction Company, Inc., and Does 2-10, inclusive.

/

**EIGHTH CLAIM:**
**FAILURE TO PAY DIVER PAY IN TORTIOUS VIOLATION OF PUBLIC POLICY**
**Plaintiff is Matthew Zugsberger**
**Defendants are Defendants T. L. Peterson, Galindo Construction, and Does 2-10, inclusive**

71.     Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13, 44-51, and 64 set forth above.

72.     California public policy as set forth in statutes and regulations, including without limitation  Labor Code §§ 6400, 6401, 6402, 6403, 6404 and 6406, requires employers to provide employees with a safe workplace. Defendants herein tortiously violated the public policy set forth therein when they required Mr. Zugsberger to dive without air so they could avoid paying him Diver pay.

73.     As the proximate result of Defendants' tortious violation of the public policy to provide employees with a safe workplace, plaintiff was wrongly deprived of Diver pay and suffered damages to be shown according to proof, and is entitled to an award therefor, including without limitation for: (1) an amount equal to the difference between what he was paid and what he would have been paid had he been paid as a Diver, with prejudgment interest thereon; and (2) emotional and physical distress, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, and other nonpecuniary losses.

74.     Defendants' tortious violation of the public policy to provide employees with a safe workplace was malicious, oppressive, fraudulent, and done with reckless and conscious indifference to Mr. Zugsberger's rights, and Mr. Zugsberger is entitled to an award of punitive damages therefor to be shown according to proof.

75.     As the further proximate result of Defendants' tortious violation of the public policy to provide employees with a safe workplace, Plaintiff Zugsberger has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants T. L. Peterson, Inc., Galindo Construction Company, Inc., and Does 2-10, inclusive.

/

/

**NINTH CLAIM:**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**Plaintiff is Matthew Zugsberger**
**Defendants are Defendants T. L. Peterson, Galindo Construction, and Does 2-10, inclusive**

76.     Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13, 44-51, and 64 set forth above.

77.      In breach of the implied covenant of good faith and fair dealing, Defendants acted in bad faith to frustrate Mr. Zugsberger's right to receive the benefit of Diver pay under the contract when they directed Mr. Zugsberger to dive without air to avoid paying him Diver pay.

78.     As the proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Mr. Zugsberger has suffered damages to be shown according to proof, and is entitled to an award therefor, including without limitation for the difference between the pay he would have received as a Diver and the pay he actually received, plus prejudgment interest thereon.

79.     As the further proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff Zugsberger has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants T. L. Peterson, Inc., Galindo Construction Company, Inc., and Does 2-10, inclusive.

**TENTH CLAIM:**
**FAILURE TO PAY OVERTIME IN VIOLATION**
**OF LABOR CODE §§ 1194, 1198, AND 510**
**Plaintiff is Matthew Zugsberger**
**Defendants are Defendants and Each of Them Other Than Doe 1**

80.     Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13, 44-51, 54 and 64 set forth above.

81.     Labor Code  §§ 1194, 510 and 1198 require employees to be paid all overtime owed. Defendants failed to pay all overtime owed and thus also violated Labor Code §§ 1194, 510 and 1198 because they paid Mr. Zugsberger and Mr. Shultz overtime based on Group 3 Laborer rather than Diver or at least Pile Driver wages for each day they were entitled to overtime.

82.     As the proximate result of Defendants' failure to pay Mr. Zugsberger and Mr. Shultz all overtime owed in violation of Labor Code §§ 1194, 510 and 1198, they suffered damages to be

1  shown according to proof, and are entitled to an award therefor equal to the difference between the
2  overtime they were paid based on Group 3 Laborer pay and the overtime they should have been paid
3  as a Diver or at least as a Pile Driver, plus prejudgment interest thereon.

4      83.     Mr. Zugsberger sent a letter on September 11, 2017, and an amended letter on October
5  30, 2017, to the California Labor and Workforce Development Agency (LWDA), with both letters
6  being sent electronically through the LWDA's website and setting forth, inter alia, the overtime
7  violations of Labor Code §1194, 510 and 1198 set forth herein and the facts and theories to support
8  the violations. The 65th day after October 30, 2017, is January 3, 2018. Mr. Zugsberger has not
9  received any notice back from the LWDA as to whether it intends to investigate the matter. Therefore,
10 Mr. Zugsberger has exhausted his administrative remedies under the Labor Code Private Attorneys
11 General Act (PAGA).

12     84.     Civil monetary penalties pursuant to PAGA should be awarded according to proof to
13 Mr. Zugsberger and Mr. Shultz against whom Defendants violated the overtime requirements in Labor
14 Code §§ 1194, 510 and 1198.

15     85.     As the further proximate result of Defendants' failure to pay Mr. Zugsberger and Mr.
16 Shultz all overtime owed in violation of Labor Code §§ 1194, 510 and 1198, Mr. Zugsberger has had
17 to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of
18 attorneys' fees and litigation expenses therefor to be shown according to proof.

19     WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants
20 and each of them other than Doe 1.

**ELEVENTH CLAIM:**
21 **FAILURE TO PROVIDE MEAL PERIODS IN**
   **VIOLATION OF LABOR CODE §§ 1198, 226.7, AND 512**
22 **Plaintiff is Matthew Zugsberger**
   **Defendants are Defendants and Each of Them Other Than Doe 1**
23

24     86.     Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13,
25 44-48, and 51 set forth above.

26     87.     In violation of Labor Code §§ 1198, 226.7 and 512, at all times from August 14, 2016
27 through November 14, 2016 on days when they worked over five hours, Mr. Zugsberger and
28 Defendants' other nonexempt employees at Drake's Estero were not provided a 30 minute meal

period where they were relieved of all work and were free to leave the workplace. In violation of Labor Code §§ 1198 and 226.7, at all times from August 14, 2016 through November 14, 2016, Mr. Zugsberger and Defendants' other nonexempt employees at Drake's Estero were not paid an additional hour of pay at their regular rate for each day they worked over five hours and were not provided a legally compliant 30 minute meal period.  Mr. Zugsberger is informed and believes that at all times from November 15, 2016 through the end of the Drake's Estero project in or about May 2017, the nonexempt employees who worked for Defendants at Drake's Estero: (1) in violation of Labor Code §§ 1198, 226.7 and 512, were not provided a legally compliant 30 minute meal period on days when they worked over five hours; and (2) in violation of Labor Code §§ 1198 and 226.7, were not paid an additional hour of pay at their regular rate for each day that they worked over five hours and were not provided a legally compliant 30 minute meal period.

88.     As the proximate result of Defendants' violations of Labor Code §§ 226.7, 1198, and 512 in failing to provide Mr. Zugsberger and their other nonexempt employees at Drake's Estero with a legally compliant 30 minute meal period on days when they worked over five hours, and their failure to provide them with an additional hour of pay on those days in violation of Labor Code §§ 226.7 and 1198, Mr. Zugsberger and Defendants' other nonexempt employees at Drake's Estero have suffered damages to  be shown according to proof, and are entitled to an award therefor, including without limitation  for the additional hour of pay at their regular rate on those days when they worked over five hours, with prejudgment interest thereon.

89.     Mr. Zugsberger sent a letter on September 11, 2017, and an amended letter on October 30, 2017, to the California Labor and Workforce Development Agency (LWDA), with both letters being sent electronically through the LWDA's website and setting forth, inter alia, the meal period violations of Labor Code §§ 226.7, 1198 and 512 set forth herein and the facts and theories to support the violations. The 65th day after October 30, 2017, is January 3, 2018. Mr. Zugsberger has not received any notice back from the LWDA as to whether it intends to investigate the matter. Therefore, Mr. Zugsberger has exhausted his administrative remedies under the Labor Code Private Attorneys General Act (PAGA).

90.     Civil monetary penalties pursuant to PAGA should be awarded to Mr. Zugsberger and Defendants' other nonexempt employees at Drake's Estero against whom Defendants violated the meal period requirements in Labor Code §§ 226.7, 1198 and 512.

91.     As the further proximate result of Defendants' meal period violations of Labor Code §§ 226.7, 1198 and 512, Plaintiff Zugsberger has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants and each of them other than Doe 1.

### TWELFTH CLAIM:
### FAILURE TO AUTHORIZE AND PERMIT REST PERIODS IN
### VIOLATION OF LABOR CODE §§ 1198 AND 226.7
**Plaintiff is Matthew Zugsberger**
**Defendants are Defendants and Each of Them Other Than Doe 1**

92.     Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13, 44-48, and 51 set forth above.

93.     Labor Code §§ 1198 and 226.7 require employers to authorize and permit their nonexempt employees to take one rest period of at least 10 minutes on each day that the employee works 3.5 to 6 hours, and two rest periods of at least 10 minutes each on each day that the employee works over 6 hours. In violation of Labor Code §§ 1198 and 226.7, at all times from August 14, 2016 through November 14, 2016, Defendants did not authorize and permit Mr. Zugsberger and their other nonexempt employees at Drake's Estero to take all legally required rest periods on days when they worked 3.5 or more hours. In further violation of Labor Code §§ 1198 and 226.7, at all times from August 14, 2016 through November 14, 2016, Defendants did not pay them an additional hour of pay at their regular rate for each day that they worked 3.5 or more hours and were not authorized and permitted to take all legally required rest periods. Mr. Zugsberger is informed and believes that in violation of Labor Code §§ 1198 and 226.7, at all times from November 15, 2016 through the end of the Drake's Estero project in or about March 2017 on days when they worked 3.5 or more hours, the nonexempt employees who worked for Defendants at Drake's Estero were not authorized and permitted to take all legally required rest periods, and were not paid an additional hour of pay at their

1  regular rate for each such day for not being authorized and permitted to take all the legally required

2  rest periods.

3      94.     As the proximate result of Defendants' violations of Labor Code §§ 226.7 and 1198

4  in failing to authorize and permit Mr. Zugsberger and their other nonexempt employees at Drake's

5  Estero to take all legally required rest periods on days when they worked 3.5 or more hours, and

6  failing to provide them with an additional hour of pay on those days in violation of Labor Code §§

7  226.7 and 1198, Mr. Zugsberger and Defendants' other nonexempt employees at Drake's Estero have

8  suffered damages to  be shown according to proof, and are entitled to an award therefor, including

9  without limitation for the additional hour of pay at their regular rate on those days when they worked

10  3.5 or more hours, with prejudgment interest thereon.

11      95.     Mr. Zugsberger sent a letter on September 11, 2017, and an amended letter on October

12  30, 2017, to the California Labor and Workforce Development Agency (LWDA), with both letters

13  being sent electronically through the LWDA's website and setting forth, inter alia, the rest period

14  violations of Labor Code §§ 226.7 and 1198 set forth herein and the facts and theories to support the

15  violations. The 65th day after October 30, 2017, is January 3, 2018. Mr. Zugsberger has not received

16  any notice back from the LWDA as to whether it intends to investigate the matter. Therefore, Mr.

17  Zugsberger has exhausted his administrative remedies under the Labor Code Private Attorneys

18  General Act (PAGA).

19      96.     Civil monetary penalties pursuant to PAGA should be awarded according to proof to

20  Mr. Zugsberger and Defendants' other nonexempt employees at Drake's Estero against whom

21  Defendants violated the rest period requirements in Labor Code §§ 226.7 and 1198.

22      97.     As the further proximate result of Defendants' rest period violations of Labor Code

23  §§ 226.7 and 1198, Plaintiff Zugsberger has had to hire attorneys and incur litigation expenses to

24  prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor

25  to be shown according to proof.

26      WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants

27  and each of them other than Doe 1.

28  /

**THIRTEENTH CLAIM:**
**FAILURE TO FURNISH ACCURATE EARNINGS STATEMENTS**
**IN VIOLATION OF LABOR CODE § 226**
**Plaintiff is Matthew Zugsberger**
**Defendants are Defendants and Each of Them Other Than Doe 1**

98.     Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13, 44-54, 64-69, 81-82, 87-88, and 93-94 set forth above.

99.     Labor Code § 226, subdivision (a), requires that employees' earnings statements, among other things, accurately show their gross and net wages earned and their hourly rate of pay. The earnings statements of Mr. Zugsberger and Defendants' other nonexempt employees azt Drake's Estero violated Labor Code § 226, subdivision (a), for reasons that included without limitation that they did not include in their gross and net wages: (1) the one hour of pay at their regular rate to which they were entitled for each day they worked over five hours and were not provided a legally compliant 30 minute meal period; and (2) the one hour of pay at their regular rate to which they were entitled for each day they worked 3.5 or more hours and were not authorized and permitted to take all legally required rest periods. The earnings statements of Mr. Zugsberger and Mr. Shultz also violated Labor Code § 226, subdivision (a), because they did not accurately show their gross and net wages earned and hourly rate of pay based on the fact that they should have been paid as a Diver, or at the bare minimum, a Pile Driver, rather than as a Group 3 Laborer.

100.     Defendants' failure to comply with Labor Code § 226, subdivision (a), was knowing and intentional in that Defendants knew that the itemized statements that they provided Mr. Zugsberger did not include the items set forth in paragraph 99 above. Mr. Zugsberger is deemed to have suffered injury from Defendants' knowing and intentional failure to comply with Labor Code § 226, subdivision (a), in that Defendants failed to accurately set forth his earnings and his rate of pay in the earnings statements and Mr. Zugsberger could not promptly and easily determine from the earnings statement alone his regular or overtime rates of pay as a Diver or even as a Pile Driver. Also, the failure of Defendants to accurately show on the earnings statements what Mr. Zugsberger earned injured Mr. Zugsberger because it allowed Defendants to avoid paying Mr. Zugsberger the true amounts he earned, including without limitation at the Diver, or at least Pile Driver, rate of pay as well as all missed meal and rest period pay.

101.   Because Plaintiff Zugsberger suffered injury as the proximate result of Defendants' knowing and intentional violations of Labor Code § 226, subdivision (a), he is entitled to statutory damages and penalties to be shown according to proof.

102.   Mr. Zugsberger sent a letter on September 11, 2017, and an amended letter on October 30, 2017, to the California Labor and Workforce Development Agency (LWDA), with both letters being sent electronically through the LWDA's website and setting forth, inter alia, the violations of Labor Code § 226, subdivision (a), set forth herein and the facts and theories to support the violations. The 65th day after October 30, 2017, is January 3, 2018. Mr. Zugsberger has not received any notice back from the LWDA as to whether it intends to investigate the matter. Therefore, Mr. Zugsberger has exhausted his administrative remedies under the Labor Code Private Attorneys General Act (PAGA).

103.   Civil monetary penalties pursuant to PAGA should be awarded according to proof to Mr. Zugsberger and Defendants' other nonexempt  employees at Drake's Estero against whom Defendants violated Labor Code § 226, subdivision (a).

104.   As the further proximate result of Defendants' violation of Labor Code § 226, subdivision (a), Plaintiff Zugsberger has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants and each of them other than Doe 1.

**FOURTEENTH CLAIM:**
**VIOLATION OF LABOR CODE §§ 201 THROUGH 203**
**Plaintiff is Matthew Zugsberger**
**Defendants are Defendants and Each of Them Other Than Doe 1**

105.   Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13, 44-54, 64-69, 77, 81-82, 87-88 and 93-94 set forth above.

106.   Labor Code § 201 requires Defendants to pay immediately upon termination all wages they owe to employees they terminate. Labor Code § 202 requires Defendants to pay within 72 hours of quitting all wages they owe to employees who quit. Mr. Zugsberger is informed and believes that Dave Shultz and possibly John Moats, two of Defendants' other nonexempt employees at Drake's

Estero, were terminated or possibly resigned. In violation of Labor Code §§ 201 or 202, Mr. Zugsberger has never been paid, and he is informed and believes that Mr. Shultz and possibly Mr. Moats have never been paid, the additional hour of pay they are owed for each day they were not provided a legally compliant 30 minute meal period, nor the additional hour of pay they are owed for each day they were not authorized and permitted to take all legally required rest periods. Also in violation of Labor Code §§ 201 or 202, Mr. Zugsberger and Mr. Shultz were not paid until months after their separation from employment the additional pay they were owed because they were not paid even Pile Driver wages as required by Davis Bacon at a bare minimum. Also in violation of Labor Code § 201, Mr. Zugsberger has never been paid the Diver wages nor the monetary value of the housing he was promised, or of the meals he would have received if he had received the housing.

107.    For employees to whom Defendants willfully fail to pay all wages owed in accordance with Labor §§ 201 and 202, they are required by Labor Code § 203 to continue the wages as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days. Defendants' failure to pay the wages to Mr. Zugsberger and Mr. Shultz, and possibly Mr. Moats, that were owed them under Labor Code §§ 201 or 202 as alleged in paragraph 106, was willful. Therefore, Defendants were required to continue to pay the wages of Mr. Zugsberger and Mr. Shultz for thirty days after their termination (or possibly resignation in the case of Mr. Shultz), and that if Mr. Moats was terminated or resigned, for thirty days after his termination or resignation. In violation of Labor Code § 203, Defendants did not do so.

108.    As the proximate result of Defendants' violation of Labor Code §§ 201 and 203, Mr. Zugsberger has suffered damages to be shown according to proof, and is entitled to an award therefor, including without limitation for all wages owed to him when he was terminated that he was not paid, with prejudgment interest thereon, and for a continuation of his wages for thirty days after his termination.

109.    Mr. Zugsberger sent a letter on September 11, 2017, and an amended letter on October 30, 2017, to the California Labor and Workforce Development Agency (LWDA), with both letters being sent electronically through the LWDA's website and setting forth, inter alia, the violations of Labor Code §§ 201 and/or 202, and 203, set forth herein and the facts and theories to support the

1
2
3
4
violations. The 65th day after October 30, 2017, is January 3, 2018. Mr. Zugsberger has not received any notice back from the LWDA as to whether it intends to investigate the matter. Therefore, Mr. Zugsberger has exhausted his administrative remedies under the Labor Code Private Attorneys General Act (PAGA).

5
6
7
110.    Civil monetary penalties pursuant to PAGA should be awarded according to proof to Mr. Zugsberger and Mr. Shultz, and to Mr. Moats if he was terminated or resigned, against whom Defendants violated Labor Code §§ 201 and/or 202, and 203.

8
9
10
11
111.    As the further proximate result of Defendants' violations of Labor Code §§ 201 and/or 202, and 203, Plaintiff Zugsberger has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

12
13
WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants and each of them other than Doe 1.

14
15
**FIFTEENTH CLAIM:**
**VIOLATION OF LABOR CODE § 2802**
**Plaintiff is Matthew Zugsberger**
**Defendants are Defendants and Each of Them Other Than Doe 1**

16
17
112.    Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13 and 44-51 set forth above.

18
19
20
21
22
23
113.    At Defendants' request, and to discharge his duties while employed by Defendants, Mr. Zugsberger brought his "dive spread" that he owned to the Drake's Estero project and used the items in the "spread" to discharge his duties as an employee of Defendants. He would leave the items in the "dive spread' at the Drake's Estero project site since it wasn't practical to take them home due to their size and weight. Mr. Zugsberger learned of his termination on November 15, 2016 when he received in the mail at his home his termination letter.

24
25
26
27
28
114.    Mr. Zugsberger requested the return of his property. On May 24, 2017, Jennifer Wright of T. L. Peterson emailed Mr. Zugsberger that some of his personal belongings (i.e., some of the items in his "dive spread") were in storage.  In June 2017, Mr. Zugsberger was able to retrieve the items that were in storage. The items he retrieved included without limitation an air rack, dive compressor, 500 pound lift bag and bailout bottle which had been damaged substantially. Through his attorney Bruce

Highman, Mr. Zugsberger informed T. L. Peterson that items had been damaged. A man at T. L. Peterson who refused to say what his name was but who is believed to be Earnest Wilson, T. L. Peterson's corporate level project manager, spoke on the phone with Mr. Highman. This man appeared to deny that anything in storage could have been damaged and refused to provide T. L. Peterson's insurance information which would have allowed Mr. Zugsberger to have made an insurance claim regarding the damage.

115.   The items that were in storage did not include all the items in Mr. Zugsberger's dive spread that he had brought to and used on the Drake's Estero project at Defendants' request and to discharge his duties. The missing items include without limitation a Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, a satellite cell phone and a bailout check gauge. Mr. Zugsberger is informed and believes that Defendants have taken possession of these items.

116.   Labor Code § 2802 provides: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, . . . ." In violation of Labor Code § 2802, Defendants have not indemnified Mr. Zugsberger for his expenditures and losses that he incurred by virtue of having to bring the items in his dive spread to work and use in discharging his duties that he was either unable to retrieve after his termination, or which he retrieved but in a substantially damaged state.

117.   As the proximate result of Defendants' violations of Labor Code § 2802, Mr. Zugsberger has suffered damages to be shown according to proof, and is entitled to an award therefor with prejudgment interest thereon, including without limitation for: (1) the fair market value of the Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, satellite cell phone and bailout check gauge when Mr. Zugsberger first brought them to work at the Drake's Estero project; and (2) the decline in the fair market value of the air rack, dive compressor, bailout bottle and 500 pound lift bag between the date he first brought them to work and the date he retrieved them from storage in their damaged state.

118.   As the further proximate result of Defendants' violations of Labor Code § 2802, Plaintiff Zugsberger has had to hire attorneys and incur litigation expenses to prosecute this lawsuit

and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants and each of them other than Doe 1.

**SIXTEENTH CLAIM:**
**CONVERSION**
**Plaintiff is Matthew Zugsberger**
**Defendants are Defendants and Each of Them Other Than Doe 1**

119.    Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13, 44-46 and 113-116 set forth above.

120.    Defendants substantially interfered with some of Mr. Zugsberger's personal property, including without limitation his Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, satellite cell phone and bailout check gauge, by taking possession of this personal property and preventing Mr. Zugsberger from having access to it.

121.    Mr. Zugsberger did not consent to Defendants' substantial interference with his personal property, including without limitation his Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, satellite cell phone and bailout check gauge.

122.    As the proximate result of Defendants' conversion, Mr. Zugsberger has suffered damages to be shown according to proof, and is entitled to an award therefor, including without limitation for the fair market value of the Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, bailout check gauge and satellite cell phone when Mr. Zugsberger was terminated, plus prejudgment interest thereon.

123.    Defendants' conversion was malicious, oppressive, fraudulent, and done with reckless and conscious indifference to Mr. Zugsberger's rights, and Mr. Zugsberger is entitled to an award of punitive damages therefor to be shown according to proof.

WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants and each of them other than Doe 1.

/

/

/

1

2

**SEVENTEENTH CLAIM:**
**TRESPASS TO CHATTELS**
**Plaintiff is Matthew Zugsberger**
**Defendants are Defendants and Each of Them Other Than Doe 1**

3

4

124.    Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13, 44-46, 113-114 and 116 set forth above.

5

6

7

125.    Defendants intentionally interfered with Mr. Zugsberger's use and possession of, and or damaged, some of his personal property, including without limitation his air rack, dive compressor, 500 pound lift bag and bailout bottle.

8

9

10

126.    Mr. Zugsberger did not consent to Defendants' intentional interference with his use and possession of, and/or Defendants' damaging of, his personal property, including without limitation his air rack, dive compressor, 500 pound lift bag and bailout bottle.

11

12

13

14

15

127.    As the proximate result of Defendants' trespass to chattels, Mr. Zugsberger has suffered damages to be shown according to proof, and is entitled to an award therefor, including without limitation for the decline in the fair market value of the air rack, dive compressor, 500 pound lift bag and bailout bottle between the date he first brought them to work and the date he retrieved them from storage in their damaged state, plus prejudgment interest thereon.

16

17

18

128.    Defendants' trespass to chattels was malicious, oppressive, fraudulent, and done with reckless and conscious indifference to Mr. Zugsberger's rights, and Mr. Zugsberger is entitled to an award of punitive damages therefor to be shown according to proof.

19

20

WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants and each of them other than Doe 1.

21

22

23

**EIGHTEENTH CLAIM:**
**NEGLIGENCE**
**Plaintiff is Matthew Zugsberger**
**Defendants are Defendants and Each of Them Other Than Doe 1**

24

25

129.    Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13, 44-46 and 113-116 set forth above.

26

27

28

130.    Defendants negligently caused: (1) the loss of some of Mr. Zugsberger's personal property, including without limitation of his Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, satellite cell phone and bailout check gauge; and (2) the substantial damage to

31

some other items of Mr. Zugsberger's personal property, including without limitation his air rack, dive compressor, 500 pound lift bag and bailout bottle.

131.   As the proximate result of Defendants' negligence, Mr. Zugsberger has suffered damages to be shown according to proof, and is entitled to an award therefor, with prejudgment interest thereon, including without limitation for: (1) the fair market value of the Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, satellite cell phone and bailout check gauge when Mr. Zugsberger first brought them to work at the Drake's Estero project; and (2) the decline in the fair market value of the air rack, dive compressor, 500 pound lift bag and bailout bottle between the date he first brought them to work and the date he retrieved them from storage in their damaged state.

WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants and each of them other than Doe 1.

**NINETEENTH CLAIM:**
**VIOLATION OF UNFAIR COMPETITION LAW,**
**BUSINESS AND PROFESSIONS CODE § 17200, ET SEQ.**
**Plaintiff is Matthew Zugsberger**
**Defendants are Defendants and Each of Them Other Than Doe 1**

132.   Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13, 44-52, 64-67, 72, 77, 81, 87, 93, 106 and 113-116 set forth above.

133.   Defendants have engaged in unfair competition in violation of the Unfair Competition Law, Business and Professions Code Section 17200, et seq., in perpetrating the acts set forth in paragraphs 44-52, 64-67, 72, 77, 81, 87, 93, 106 and 113-116 set forth above.

134.   Plaintiff Zugsberger is entitled to an award of restitution to be shown according to proof, including without limitation, of: (1) the minimum wage for the approximately 40 hours he worked after agreeing to be an employee but before August 14, 2016, plus prejudgment interest thereon; (2) prejudgment interest through in or about June 2017 on the difference between what he was paid on his pay days while he was employed by Defendants and what he would have been paid had he been paid as a Pile Driver; (3)  the difference between the pay he would have received as a Diver and the pay he actually received, plus prejudgment interest thereon; (4) the value of the lodging and meals that he would have received if he had been put up at Tomales Bay Resort like the other

employees, plus the difference between his actual commuting expense and what it would have been had he stayed at Tomales Bay Resort, together with prejudgment interest thereon; (5) the difference between the overtime he was paid based on Group 3 Laborer pay and the overtime he should have been paid as a Diver or at a bare minimum as a Pile Driver, plus prejudgment interest thereon; (6) an additional hour of pay at his regular rate for each day that he worked over five hours for not being provided a legally compliant meal period on those days, plus prejudgment interest thereon; (7) a second additional hour of pay at his regular rate for each day that he worked 3.5 or more hours for not being authorized and permitted to take all legally required rest periods on those days, plus prejudgment interest thereon; (8) the fair market value of the Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, bailout check gauge and satellite cell phone when he first brought them to work at the Drake's Estero project, plus prejudgment interest thereon; and (9) the decline in the fair market value of the air rack, dive compressor, bailout bottle and 500 pound lift bag between the date he first brought them to work and the date he retrieved them from storage in their damaged state, plus prejudgment interest thereon.

135.    As the further proximate result of Defendants' violations of the Unfair Competition Law, Plaintiff Zugsberger has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants and each of them other than Doe 1.

**TWENTIETH CLAIM:**
**FRAUD AND DECEIT BY INTENTIONAL MISREPRESENTATION**
**Plaintiff is Matthew Zugsberger**
**Defendants are Defendants T. L. Peterson, Galindo**
**Construction, Don Ron Galindo and Does 2-10, inclusive**

136.    Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13 and 44-51 set forth above.

137.    As alleged in paragraph 47 above, Mr. Galindo represented to Mr. Zugsberger that Mr. Zugsberger would be a Diver, other employees at Galindo Construction could serve with Mr. Zugsberger as the diving team, and Mr. Zugsberger's company, NorCal SubSea, supposedly would

have to pay for a $5 million environmental insurance policy if Mr. Zugsberger did the diving through NorCal SubSea rather than as an employee of Galindo Construction. These representations were false. When Mr. Galindo made these representations, he knew they were false or at least made them recklessly without regard for their truth. Mr. Zugsberger was not a Diver once he went to work for Defendants in that Defendants did not let him use air or pay him as a Diver other than the first day when a reporter and numerous National Park Service officials were present. Other employees did not serve with Mr. Zugsberger as a proper diving team, and they couldn't since they didn't have the proper equipment, experience, certification or training. NorCal SubSea would not have had to pay for a $5 million environmental insurance policy if Mr. Zugsberger had done the diving through NorCal SubSea.

138.    Defendants intended Mr. Zugsberger to rely on these representations. In reasonable reliance on these representations, Mr. Zugsberger quit his job in New Jersey, moved to California and became an employee of Galindo Construction doing the work of a Diver for a Group 3 Laborer's pay.

139.    As the proximate result of Defendants' fraud and deceit by intentional misrepresentation, Plaintiff Zugsberger has suffered damages to be shown according to proof, and is entitled to an award therefor, including without limitation for lost income and benefits with prejudgment interest thereon, emotional and physical distress, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, and other nonpecuniary losses.

140.    Defendants' fraud and deceit by intentional misrepresentation was malicious, oppressive, fraudulent, and done with reckless and conscious indifference to Mr. Zugsberger's rights, and Mr. Zugsberger is entitled to an award of punitive damages therefor to be shown according to proof.

WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants T. L. Peterson, Inc., Galindo Construction Company, Inc., Don Ron Galindo, and Does 2-10, inclusive.

/

/

/

1
2
3

**TWENTY-FIRST CLAIM:**
**FRAUD AND DECEIT BY CONCEALMENT**
**Plaintiff is Matthew Zugsberger**
**Defendants are Defendants T. L. Peterson, Galindo**
**Construction, Don Ron Galindo and Does 2-10, inclusive**

4   141.    Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13

5   and 44-51 set forth above.

6   142.    Mr. Galindo represented to Mr. Zugsberger that he would be a Diver, it would be  a

7   public works contract and other employees at Galindo Construction could serve with Mr. Zugsberger

8   as the diving team. But Defendants intentionally failed to disclose to Mr. Zugsberger that he would

9   not be permitted to use air and would not be paid as a Diver but rather as a Group 3 Laborer, and that

10  the other employees were not qualified to serve as a proper diving team since they didn't have the

11  proper equipment, experience, certification or training. These intentional nondisclosures made the

12  representations to Mr. Zugsberger that he would be a Diver, it would be a public works contract and

13  other employees at Galindo Condo Construction could serve with Mr. Zugsberger as the diving team

14  deceptive.

15  143.    Defendants knew but failed to disclose to Mr. Zugsberger that there were substances

16  in Drake's Estero, including without limitation in the oyster racks and debris he would be removing,

17  that were present at a hazardous level, including without limitation, arsenic, copper, zinc, and

18  creosote. Mr. Zugsberger did not know and could not have discovered these facts before he quit his

19  job in New Jersey, came to California and became a Galindo Construction employee.

20  144.    Defendants intended to deceive Mr. Zugsberger by concealing from him that if worked

21  on the Drake's Estero project as a their employee, he wouldn't be allowed to use air and wouldn't be

22  paid as a Diver but rather as a Group 3 Laborer, the other employees were not qualified to serve as

23  a proper diving team since they didn't have the proper equipment, experience, certification or training,

24  and he would be working with toxic substances at hazardous levels.

25  145.    Mr. Zugsberger didn't know until after he became Defendants' employee that he

26  wouldn't be permitted to use air and would not be paid as a Diver but rather as a Group 3 Laborer;

27  that the other employees were not qualified to serve as a proper diving team since they didn't have

28  the proper equipment, experience, certification or training, and he would be working with toxic

1   substances at hazardous levels. Had he known these facts before he quit his job in New Jersey, moved
2   to California, and became Defendants' employee, he reasonably would have behaved differently.

3       146.   As the proximate result of Defendants' fraud and deceit by concealment, Plaintiff
4   Zugsberger has suffered damages to be shown according to proof, and is entitled to an award therefor,
5   including without limitation for lost income and benefits with prejudgment interest thereon, emotional
6   and physical distress, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, and
7   other nonpecuniary losses.

8       147.   Defendants' fraud and deceit by concealment was malicious, oppressive, fraudulent,
9   and done with reckless and conscious indifference to Mr. Zugsberger's rights, and Mr. Zugsberger
10  is entitled to an award of punitive damages therefor to be shown according to proof.

11      WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants
12  T. L. Peterson, Inc., Galindo Construction Company, Inc., Don Ron Galindo, and Does 2-10,
13  inclusive.

14  **TWENTY-SECOND CLAIM:**
    **FRAUD AND DECEIT BY FALSE PROMISE**
15  **Plaintiff is Matthew Zugsberger**
    **Defendants are Defendants T. L. Peterson, Galindo**
16  **Construction, Don Ron Galindo and Does 2-10, inclusive**

17      148.   Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13
18  and 44-51 set forth above.

19      149.   Mr. Galindo made a promise to Mr. Zugsberger that he would be a Diver on the
20  Drake's Estero project and other employees of Galindo Construction could serve with him as the
21  diving team.

22      150.   Mr. Galindo did not intend for Defendants to perform these promises when he made
23  them. Mr. Galindo made these promises to induce Mr. Zugsberger to quit his job in New Jersey, move
24  to California and become an employee of Galindo Construction doing the work of a Diver for a Group
25  3 Laborer's pay.  In reasonable reliance on these promises, Mr. Zugsberger quit his job in New Jersey,
26  moved to California and became an employee of Galindo Construction doing the work of a Diver for
27  a Group 3 Laborer's pay. Defendants' did not perform these promises. Rather when Mr. Zugsberger
28  became Defendants' employee, he was not permitted to use air and was thus not considered a Diver

other than the first day when a reporter and numerous National Park Service officials were present. The other employees were not qualified to serve as a proper diving team since they didn't have the proper equipment, experience, certification or training.

151. As the proximate result of Defendants' fraud and deceit by false promise, Plaintiff Zugsberger has suffered damages to be shown according to proof, and is entitled to an award therefor, including without limitation for lost income and benefits with prejudgment interest thereon, emotional and physical distress, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, and other nonpecuniary losses.

152. Defendants' fraud and deceit by false promise was malicious, oppressive, fraudulent, and done with reckless and conscious indifference to Mr. Zugsberger's rights, and Mr. Zugsberger is entitled to an award of punitive damages therefor to be shown according to proof.

WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants T. L. Peterson, Inc., Galindo Construction Company, Inc., Don Ron Galindo, and Does 2-10, inclusive.

### TWENTY-THIRD CLAIM:
### VIOLATION OF LABOR CODE § 970
**Plaintiff is Matthew Zugsberger**
**Defendants are Defendants T. L. Peterson, Galindo**
**Construction, Don Ron Galindo and Does 2-10, inclusive**

153. Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13, 44-51, 137-138, 142-145 and 149-150 set forth above.

154. Defendants' fraud and deceit violated Labor Code § 970 which provides:

"No person, or agent or officer thereof, directly or indirectly, shall influence, persuade, or engage any person to change from one place to another in this State or from any place outside to any place within the State, or from any place within the State to any place outside, for the purpose of working in any branch of labor, through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, concerning either:

(a) The kind, character, or existence of such work;

(b) The length of time such work will last, or the compensation therefor;"

155. As the proximate result of Defendants' violations of Labor Code § 970, Plaintiff Zugsberger has suffered damages to be shown according to proof, and is entitled to an award therefor, including without limitation for lost income and benefits with prejudgment interest thereon, emotional

1    and physical distress, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, and

2    other nonpecuniary losses.

3         156.    Pursuant to Labor Code § 972, Plaintiff Zugsberger's damages as alleged in paragraph

4    155 are doubled.

5         WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants

6    T. L. Peterson, Inc., Galindo Construction Company, Inc., Don Ron Galindo, and Does 2-10,

7    inclusive.

8                    **TWENTY-FOURTH CLAIM:**
                **NEGLIGENT MISREPRESENTATION AND DECEIT**
9                   **Plaintiff is Matthew Zugsberger**
            **Defendants are Defendants T. L. Peterson, Galindo**
10          **Construction, Don Ron Galindo and Does 2-10, inclusive**

11        157.    Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13

12   and 44-51 set forth above.

13        158.     As alleged in paragraph 47 above, Mr. Galindo represented to Mr. Zugsberger that

14   Mr. Zugsberger would be a Diver, other employees at Galindo Construction could serve with Mr.

15   Zugsberger as the diving team, and Mr. Zugsberger's company, NorCal SubSea, supposedly would

16   have to pay for a $5 million environmental insurance policy if Mr. Zugsberger did the diving through

17   NorCal SubSea rather than as an employee of Galindo Construction. These representations were not

18   true. When Mr. Galindo made these representations, he had no reasonable grounds for believing them

19   to be true. Mr. Zugsberger was not a Diver once he went to work for Defendants in that Defendants

20   did not let him use air or pay him as a Diver other than the first day when a reporter and numerous

21   National Park Service officials were present. Other employees did not serve with Mr. Zugsberger as

22   a proper diving team, and they couldn't since they didn't have the proper equipment, experience,

23   certification or training. NorCal SubSea would not have had to pay for a $5 million environmental

24   insurance policy if Mr. Zugsberger had done the diving through NorCal SubSea.

25        159.    Defendants intended Mr. Zugsberger to rely on these representations. In reasonable

26   reliance on these representations, Mr. Zugsberger quit his job in New Jersey, moved to California and

27   became an employee of Galindo Construction doing the work of a Diver for a Group 3 Laborer's pay.

28   /

160.    As the proximate result of Defendants' negligent misrepresentation and deceit, Plaintiff Zugsberger has suffered damages to be shown according to proof, and is entitled to an award therefor, including without limitation for lost income and benefits with prejudgment interest thereon.

WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants T. L. Peterson, Inc., Galindo Construction Company, Inc., Don Ron Galindo, and Does 2-10, inclusive.

**TWENTY-FIFTH CLAIM:**
**VIOLATION OF LABOR CODE §§ 1102.5 AND 98.6**
**Plaintiff is Matthew Zugsberger**
**Defendants are Defendants T. L. Peterson, Galindo Construction, and Does 2-10, inclusive**

161.    Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13, 18-22, 28, 33, 42, 44-52, 59-62, 64-67, 113-116, 120-121, 125-126, 137-138, 142-145, 149-150 and 154 set forth above.

162.    Mr. Zugsberger made numerous workplace safety complaints throughout his employment to Mr. Galindo, a  managing agent over him and an owner at Galindo Construction, and to Mark Cassady, the superintendent over him and other Galindo Construction employees at T. L. Peterson, Inc.. These complaints, included without limitation, complaints re the failure to use turbidity curtains which would have identified and contained oil and other toxins in the water and instead using soap, the failure to wear type 5 portable flotation devices, the failure to have and use hazmat gear, putting wood with rusty nails taken up from the bottom of the Estero all over the barge rather than stacking the wood in the corner or  close to the corner as much as possible so it was out of the way, the failure to use Mr. Zugsberger to unload wood when he was the only employee who was certified in rigging, the failure to train and certify the employees in hazmat and hazwoper gear, the failure to allow Mr. Zugsberger to use air when diving under water, the failure to have a proper three person diving team with all proper equipment, experience, training and certification, requiring Mr. Zugsberger to walk through water with a 3/4 inch polypropylene line, the failure to have life baskets, and the failure to have the barge properly marked with the required lighting to travel before the sun was up. Mr. Zugsberger also complained to Mr. Galindo and Mr. Cassidy about his only receiving Group 3 Laborer pay rather than Diver pay or even Pile Driver pay, and also about Defendants placing

1  on the bare ground on shore the wood and debris of the oyster farm that was removed from the Estero

2  and that contained toxins instead of putting it on plastic matting before disposing of it.

3       163.   Mr. Zugsberger also complained about the above matters to Pile Drivers, Divers,

4  Carpenters, Bridge, Wharf and Dock Builders' Local Union # 34. Mr. Zugsberger was a member of

5  Local 34, wore a sticker so indicating on his hard hat that he wore to work, and had told Mr. Galindo

6  that he was a member of Local 34. In or about October 2016, after Mr. Zugsberger complained to him,

7  Jim Johansen, a representative of Local 34, visited the Drake's Estero project site three times. The

8  first time he came alone. Someone falsely told him that Galindo was not at the site, so he left.

9  Subsequently, he spoke with Mr. Zugsberger who told him that Galindo was there. So Mr. Johansen

10  came back a second time on or about October 19, 2016, this time with another representative of Local

11  34 and with a representative of Operating Engineers Local 3. Jack Williams, the Project Manager at

12  Drake's Estero for the National Park Service, and Mark Cassady, T. L. Peterson's superintendent, met

13  them. Mr. Johansen identified who he was including that he was a representative of Local 34. Mr.

14  Williams told them it was a job site, directed them to leave and told them that if they didn't, they'd

15  be arrested for trespassing even though the land was part of Point Reyes National Seashore. Mr.

16  Johansen said they was there to  monitor the project, check safety, were interested in the Davis Bacon

17  wage rates and had a right to be there. Mr. Williams insisted they didn't have a right to be there. Mr.

18  Johansen insisted that being with the union, they had a right to be at a job site and could come back

19  with documentation. Mr. Williams gave them a ride off the premises. The October 19 visit from the

20  union representatives is discussed in draft minutes regarding an October 25, 2016 meeting regarding

21  the status of the Project.  The draft minutes were distributed on October 26, 2016 to National Park

22  Service employees and to Earnest Wilson and Mark Cassady of T. L. Peterson and to Mr. Galindo.

23  The third time, Mr. Johansen came with another representative from Local 34. No one stopped them

24  this time. They saw Mr. Zugsberger free diving and with no backup Diver which was unsafe.

25       164.   Mr. Zugsberger additionally complained about the matters set forth in paragraph 162

26  to the National Park Service multiple times in October 2016, specifically to Jack Williams, the Project

27  Manager at Drake's Estero, and to Patrick Breen, the national Bureau Procurement Chief in

28  Washington, D.C.. Mr. Zugsberger believes he also told Mr. Breen that Defendants may have used

a higher wage rate in their original bid than they were actually paying their employees. On October 13, 2016, Mr. Williams wrote in an email to another National Park Service employee, "The subcontractor [Galindo] has a laborer that spends a good amount of time in the water with wetsuit and goggles during higher tides. . . . I questioned the subcontractor and he said that dive pay was only for use when air/scuba was used." In an October 24, 2016 email to other National Park Service employees, Mr. Williams wrote that Mr. Zugsberger told him, "The union believes he should be paid as a pile driving laborer." Actually, Mr. Zugsberger had told Mr. Williams the union believed he should be paid as a Diver, and at the bare minimum as a Pile Driver.  On or about October 28, 2016, Mr. Zugsberger met with Mr. Williams in a conex box at the work site and discussed his workplace safety complaints. The meeting lasted for probably about 10-15 minutes. Mr. Galindo and employees of Galindo Construction kept walking in and out of the conex box and stood and walked by the open door to the conex box while Mr. Zugsberger was meeting with Mr. Williams.

165.    Mr. Zugsberger additionally complained about the matters set forth in paragraph 162 to the U.S. Department of Interior, Office of Inspector General (DOI-OIG). Mr. Zugsberger also told DOI-OIG that Defendants may have used a higher wage rate in their original bid than they were actually paying their employees. Mr. Zugsberger's belief that Defendants may have done this was reasonable for reasons that include without limitation: (1) for the work he did, he should have been paid Diver pay or at least Pile Drive pay rather than General Laborer 3 pay; and (2) Mr. Galindo told him he'd be a Diver before he accepted the position, and then had him write up a safe practices manual for diving. Mr. Zugsberger initially complained to DOI-OIG on or about October 12, 2016, and had subsequent communications with them while still employed by Defendants. DOI-OIG has told Mr. Zugsberger that they communicated with T. L. Peterson about his complaint in October 2016.

166.    Mr. Zugsberger also complained to the Foundation for Fair Contracting about the matters set forth in paragraph 162. Mr. Zugsberger is informed and believes that the Foundation for Fair Contracting contacted Defendant Lisa Galindo in October 2016 to question her about Mr. Zugsberger's rate of pay.

167.    Mr. Zugsberger complained about the workplace safety matters to the Occupational Safety and Health Administration (OSHA) in late October and/or early November 2016. Mr.

Zugsberger's complaint to OSHA caused OSHA to inspect Defendants' premises at Drake's Estero on November 8 and 9, 2016 and cite Defendants for violations.

168.    Defendants were required to submit to the United States weekly their payroll for the week and to have the payroll accurately set forth, among other things, the correct classification of each laborer and mechanic working at the site and their hourly rates. For purposes of this requirement, "The term *laborer* or *mechanic* includes at least those workers whose duties are manual or physical in nature (including those workers who use tools or who are performing the work of a trade) as distinguished from mental or managerial." 29 CFR § 5.2, subd. (m). It includes, among others, workers classified as Divers, Pile Drivers, and General Laborer 3s under Davis Bacon. Mr. Zugsberger and Mr. Shultz were "laborers or mechanics" in that their duties were manual or physical rather than mental or managerial. Defendants were also required to accompany the payroll with a Statement of Compliance which certified, among other things, that their payroll was correct and complete, and that each laborer or mechanic employed during the payroll period had been paid their full weekly wages earned and not less than their applicable wage rate and fringe benefits or cash equivalents for the Davis Bacon classification of work they performed. Defendants' payrolls were false in that they did not show the correct classification of Mr. Zugsberger and Mr. Shultz or their correct hourly rates. Defendants' Statements of Compliance were also false in that their payroll wasn't correct, and they hadn't paid Mr. Zugsberger or Mr. Shultz their full weekly wages earned or their applicable wage rates for the Davis Bacon classification of work they performed.. The contract between T. L. Peterson and the United States stated that the falsification of the Statements of Compliance "may subject the Contractor or subcontractor to civil or criminal prosecution under Section 1001 of Title 18 [the False Statements Act] and Section 3729 of Title 31 [the False Claims Act] of the United States Code." Defendants' false payrolls and Statements of Compliance thus violated, among other statutes, the False Statements Act and the False Claims Act.

169.    Mr. Zugsberger reasonably believed his complaints set forth in paragraphs 162-167 disclosed violations of California or federal statutes, rules and regulations designed to protect workplace safety and the environment, prohibit fraud and deceit, and of federal statutes, rules and regulations relating to federal contracts and the prevailing wage for employees on federal public

works contracts. They in fact disclosed violations, including without limitation of: (1) Labor Code §§ 6400, 6401, 6402, 6403, 6404, 6406 and 1194; (2) OSHA and Cal-OSHA statutes and regulations, including without limitation, 29 CFR §§ 1910.401, et seq., 1926.106, and 1926.1427; (3) California statutes against fraud and deceit, including without limitation, Penal Code §§ 484 and 532, Civil Code §§ 1572, 1573, 1709 and 1710, Labor Code § 970 and the Unfair Competition Law, which is Business and Professions Code § 17200, et seq.; (4) the Davis-Bacon Act; (5) the False Claims Act, which is 31 U.S.C. § 3729, et seq.; and (6) the False Statements Act, which is 18 U.S.C. § 1001. Mr. Zugsberger was protected from retaliation for making these complaints under Labor Code §§ 1102.5 and 98.6.

170.    In violation of Labor Code §§ 1102.5 and 98.6, Defendants retaliated against Mr. Zugsberger for his complaints that are set forth in paragraphs 162-167 above through taking adverse employment actions against him, including without limitation: (1) denying him housing that was provided to the other employees; (2) not permitting him to work on or after November 7, 2016; (3) terminating him on November 14, 2016; (4) converting some of his personal property, including without limitation his Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, bailout check gauge, and satellite cell phone; (5) trespassing as to some of his personal property, including without limitation his air rack, dive compressor, bailout bottle and 500 pound lift bag; and (6) not indemnifying him for his expenditures and losses that he incurred by virtue of having to bring the items in his dive spread to work and use in  discharging his duties that he was either unable to retrieve after his termination, or which he retrieved but in a substantially damaged state.    ¶

171.    As the proximate result of Defendants' violations of Labor Code §§ 1102.5 and 98.6, Plaintiff Zugsberger has suffered damages to be shown according to proof, and is entitled to an award therefor, including without limitation for: (1) the value of the lodging and meals that he would have received if he had been put up at Tomales Bay Resort like the other employees, plus the difference between his actual commuting expense and what it would have been had he stayed at Tomales Bay Resort, together with prejudgment interest thereon; (2) the fair market value of the Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, bailout check gauge and satellite cell phone when Mr. Zugsberger first brought them to work at the Drake's Estero project, with prejudgment

interest thereon; (3) the decline in the fair market value of the air rack, dive compressor, 500 pound lift bag and bailout bottle between the date he first brought them to work and the date he retrieved them from storage in their damaged state, with prejudgment interest thereon; (4) lost income and benefits, with prejudgment interest thereon; and (5) emotional and physical distress, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, and other nonpecuniary losses.

172.     Pursuant to subdivision (b)(3) of Labor Code § 98.6, Mr. Zugsberger is entitled to recover a $10,000 civil penalty against Defendants for each violation of Labor Code § 98.6.

173.     Defendants' violations of Labor Code §§ 1102.5 and 98.6 were malicious, oppressive, fraudulent, and done with reckless and conscious indifference to Mr. Zugsberger's rights, and Mr. Zugsberger is entitled to an award of punitive damages therefor to be shown according to proof.

174.     Mr. Zugsberger sent a letter on October 30, 2017, to the California Labor and Workforce Development Agency (LWDA) electronically through the LWDA's website and setting forth, inter alia, the violations of Labor Code §§ 1102.5 and 98.6 set forth herein and the facts and theories to support the violations. The 65th day after October 30, 2017, is January 3, 2018. Mr. Zugsberger has not received any notice back from the LWDA as to whether it intends to investigate the matter. Therefore, Mr. Zugsberger has exhausted his administrative remedies under the Labor Code Private Attorneys General Act (PAGA).

175.     Civil monetary penalties pursuant to PAGA should be awarded according to proof to Mr. Zugsberger pursuant to PAGA for Defendants' violations of Labor Code §§ 1102.5 and 98.6.

176.     As the further proximate result of Defendants' violations of Labor Code §§ 1102.5 and 98.6, Plaintiff Zugsberger has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants T. L. Peterson, Inc., Galindo Construction Company, Inc., and Does 2-10, inclusive.

/

/

/

1

2

**TWENTY-SIXTH CLAIM:**
**VIOLATION OF LABOR CODE §§ 6310 AND 98.6**
**Plaintiff is Matthew Zugsberger**
**Defendants are Defendants T. L. Peterson, Galindo Construction, and Does 2-10, inclusive**

3

4

177.    Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13, 18-22, 28, 33, 42, 44-51, 59-62, 64-67 and 162-167 set forth above.

5

6

7

8

9

178.    In violation of Labor Code §§ 6310 and 98.6, Defendants retaliated against Mr. Zugsberger for his workplace safety complaints through taking adverse employment actions against him, including without limitation: (1) denying him housing that was provided to the other employees; (2) not permitting him to work on or after November 7, 2016; and (3) terminating him on November 14, 2016.

10

11

12

179.    As the proximate result of Defendants' violations of Labor Code §§ 6310 and 98.6, Plaintiff Zugsberger has suffered damages to be shown according to proof, and is entitled to an award therefor, including without limitation for lost wages and benefits, plus prejudgment interest thereon.

13

14

180.    Pursuant to subdivision (b)(3) of Labor Code § 98.6, Mr. Zugsberger is entitled to recover a $10,000 civil penalty against Defendants for each violation of Labor Code § 98.6.

15

16

17

18

19

20

21

181.    Mr. Zugsberger sent a letter on October 30, 2017, to the California Labor and Workforce Development Agency (LWDA) electronically through the LWDA's website and setting forth the violations of Labor Code §§ 6310 and 98.6 set forth herein and the facts and theories to support the violations. The 65th day after October 30, 2017, is January 3, 2018. Mr. Zugsberger has not received any notice back from the LWDA as to whether it intends to investigate the matter. Therefore, Mr. Zugsberger has exhausted his administrative remedies under the Labor Code Private Attorneys General Act (PAGA).

22

23

182.     Civil monetary penalties pursuant to PAGA should be awarded according to proof to Mr. Zugsberger for Defendants' violations of Labor Code §§ 6310 and 98.6.

24

25

26

27

183.    As the further proximate result of Defendants' violations of Labor Code §§ 6310 and 98.6, Plaintiff Zugsberger has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

28

WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants

T. L. Peterson, Inc., Galindo Construction Company, Inc., and Does 2-10, inclusive.

**TWENTY-SEVENTH CLAIM:**
**VIOLATION OF 41 USC § 4712**
**Plaintiff is Matthew Zugsberger**
**Defendants are Defendants T. L. Peterson, Galindo Construction, and Does 2-10, inclusive**

184. Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13, 18-22, 28, 33, 42, 44-52, 59-62, 64-67, 113-116, 120-121, 125-126, 137-138, 142-145, 149-150, 154, 162-166 and 168-169 set forth above.

185. 41 U.S.C. § 4712 prohibits retaliation against an employee of a contractor or subcontractor for disclosing information to-- "an Inspector General," "a Federal employee responsible for contract or grant oversight or management at the relevant agency," or "a management official or other employee of the contractor, subcontractor, or grantee who has the responsibility to investigate, discover or address misconduct"-- "that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, . . . an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant."

186. Mr. Zugsberger reasonably believed his complaints set forth in paragraphs 162-166 above disclosed evidence of gross mismanagement of a federal contract or grant, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, and/or a violation of law, rule, or regulation relating to a Federal contract or grant. As set forth in paragraphs 162, 163 and 166, he disclosed these matters directly to Mr. Galindo and Mr. Cassady, and also indirectly to them through Local Union # 34 and the Foundation for Fair Contracting.  Mr. Galindo was a  management official and employee of the subcontractor. Mr. Cassady was a management official and employee of the contractor. As set forth in paragraphs 164-165, Mr. Zugsberger also disclosed these matters to Mr. Williams, Mr. Breen and the DOI-OIG. Mr. Williams and Mr. Breen were Federal employees responsible for contract oversight or management at the National Park Service, the relevant agency. The DOI-OIG was an Inspector General. Therefore, Mr. Zugsberger's complaints in paragraphs 162-166 were protected from retaliation under 41 U.S.C. § 4712.

187.    In violation of 41 U.S.C. § 4712, Defendants retaliated against Mr. Zugsberger for his complaints that are set forth in paragraphs 162-166 above through taking adverse employment actions against him, including without limitation: (1) denying him housing that was provided to the other employees; (2) not permitting him to work on or after November 7, 2016; (3) terminating him on November 14, 2016; (4) converting some of his personal property, including without limitation his Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, bailout check gauge and satellite cell phone; (5) trespassing as to some of his personal property, including without limitation his air rack, dive compressor, bailout bottle and 500 pound lift bag; and (6) not indemnifying him for his expenditures and losses that he incurred by virtue of having to bring the items in his dive spread to work and use in discharging his duties that he was either unable to retrieve after his termination, or which he retrieved but in a substantially damaged state.

188.    Mr. Zugsberger complained to the DOI-OIG in October 2016. The Secretary of the Interior has not issued an Order regarding the complaint. More than 210 days have passed. Therefore, Mr. Zugsberger has exhausted his administrative remedies.

189.    As the proximate result of Defendants' violations of 41 U.S.C. § 4712, Plaintiff Zugsberger has suffered damages to be shown according to proof, and is entitled to an award therefor, including without limitation for: (1) the value of the lodging and meals that he would have received if he had been put up at Tomales Bay Resort like the other employees, plus the difference between his actual commuting expense and what it would have been had he stayed at Tomales Bay Resort, together with prejudgment interest thereon; (2) the fair market value of the Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, bailout check gauge and satellite cell phone when Mr. Zugsberger first brought them to work at the Drake's Estero project, with prejudgment interest thereon; (3) the decline in the fair market value of the air rack, dive compressor, bailout bottle and 500 pound lift bag between the date he first brought them to work and the date he retrieved them from storage in their damaged state, with prejudgment interest thereon; (4) lost income and benefits, with prejudgment interest thereon; and (5) emotional and physical distress, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, and other nonpecuniary losses.

/

190.    As the further proximate result of Defendants' violations of 41 U.S.C. § 4712, Plaintiff Zugsberger has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants T. L. Peterson, Inc., Galindo Construction Company, Inc., and Does 2-10, inclusive.

**TWENTY-EIGHTH CLAIM:**
**VIOLATION OF 31 U.S.C. § 3730, subd. (h)**
**Plaintiff is Matthew Zugsberger**
**Defendants are Defendants T. L. Peterson, Galindo Construction, and Does 2-10, inclusive**

191.    Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13, 44-51, 59-62, 64-67, 113-116, 120-121, 125-126, 137-138, 142-145, 149-150, 154, 162-166 and 168-169 set forth above.

192.    In complaining about not receiving Diver pay, or Pile Driver pay at a bare minimum, and in telling DOI-OIG and the National Park Service that Defendants may have used a higher wage rate in their original bid than they were actually paying their employees, Mr. Zugsberger engaged in conduct protected from retaliation under 31 U.S.C. § 3730, subd. (h), of the False Claims Act.

193.    In violation of 31 U.S.C. § 3730, subd. (h), Defendants retaliated against Mr. Zugsberger for his protected conduct as set forth in paragraph 192, through taking adverse employment actions against him, including without limitation: (1) denying him housing that was provided to the other employees; (2) not permitting him to work on or after November 7, 2016; (3) terminating him on November 14, 2016; (4) converting some of his personal property, including without limitation his Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, bailout check gauge and satellite cell phone; (5) trespassing as to some of his personal property, including without limitation his air rack, dive compressor, bailout bottle and 500 pound lift bag; and (6) not indemnifying him for his expenditures and losses that he incurred by virtue of having to bring the items in his dive spread to work and use in  discharging his duties that he was either unable to retrieve after his termination, or which he retrieved but in a substantially damaged state.

194.    As the proximate result of Defendants' violations of 31 U.S.C. § 3730, subd. (h), Plaintiff Zugsberger has suffered damages to be shown according to proof, and is entitled to an award therefor, with prejudgment interest thereon,  including without limitation for: (1) the value of the

lodging and meals that he would have received if he had been put up at Tomales Bay Resort like the other employees, plus the difference between his actual commuting expense and what it would have been had he stayed at Tomales Bay Resort, together with prejudgment interest thereon; (2) the fair market value of the Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, bailout check gauge and satellite cell phone when Mr. Zugsberger first brought them to work at the Drake's Estero project; (3) the decline in the fair market value of the air rack, dive compressor, bailout bottle and 500 pound lift bag between the date he first brought them to work and the date he retrieved them from storage in their damaged state; and (4) lost income and benefits, with the amount of income and benefits he loses through the date of trial being doubled.

195.    As the further proximate result of Defendants' violations of 31 U.S.C. § 3730, subd. (h), Plaintiff Zugsberger has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Plaintiff Zugsberger prays judgment as set forth below against Defendants T. L. Peterson, Inc., Galindo Construction Company, Inc., and Does 2-10, inclusive.

**TWENTY-NINTH CLAIM:**
**RETALIATORY TORTIOUS VIOLATION OF PUBLIC POLICY**
**Plaintiff is Matthew Zugsberger**
**Defendants are Defendants T. L. Peterson, Galindo Construction, and Does 2-10, inclusive**

196.    Plaintiff Zugsberger realleges and incorporates herein by reference paragraphs 3-13, 44-52, 59-62, 64-67, 113-116, 120-121, 125-126, 137-138, 142-145, 149-150, 154, 162-170, 178, 185-187 and 192-193 set forth above.

197.    Mr. Zugsberger complained to Mr. Galindo and Mr. Cassady about not receiving the housing benefit at Tomales Bay Resort as Mr. Galindo had promised and that the other employees received.

198.    As set forth in the twenty-fifth through twenty-eighth claims in this complaint, Mr. Zugsberger engaged in conduct that was protected from retaliation by the public policy set forth in Labor Code §§ 1102.5, 98.6 and 6310, 41 U.S.C. § 4712 and 31 U.S.C. § 3730. Mr. Zugsberger's complaints about not receiving Diver pay, or Pile Driver pay at a bare minimum, and about not receiving the housing benefit that the other Galindo Construction employees received, were protected

49

from retaliation by the public policy regarding paying employees all wages they are owed, as set forth in the Davis-Bacon Act and in the California Labor Code, including without limitation in Labor Code §§ 201-204, 216, 1194 and 1199. Mr. Zugsberger's complaints regarding workplace safety and the environment were protected by the public policy regarding a safe workplace and protection of the environment, as set forth in various statutes and regulations, including without limitation Labor Code §§ 6310, 6400, 6401, 6402, 6403, 6404, and 6406 and   OSHA and Cal-OSHA statutes and regulations, including without limitation, 29 CFR §§ 1910.401, et seq., 1926.106, and 1926.1427. Mr. Zugsberger's complaints about not receiving Diver pay, or Pile Driver pay at a bare minimum, and his telling DOI-OIG and possibly the National Park Service that Defendants may have used a higher wage rate in their original bid than they were actually paying their employees, were also protected by the public policy set forth in California statutes against fraud and deceit, including without limitation, Penal Code §§ 484 and 532, Civil Code §§ 1572, 1573, 1709 and 1710, Labor Code § 970 and the Unfair Competition Law, which is Business and Professions Code § 17200, et seq., and in the False Claims Act and the False Statements Act.

199.    In tortious violation of public policy, Defendants retaliated against Mr. Zugsberger for his protected conduct, as set forth in paragraph 198, through taking adverse employment actions against him, including without limitation: (1) denying him housing that was provided to the other employees; (2) not permitting him to work on or after November 7,  2016; (3) terminating him on November 14, 2016; (4) converting some of his personal property, including without limitation his Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, bailout check gauge and satellite cell phone; (5) trespassing as to some of his personal property, including without limitation his air rack, dive compressor, bailout bottle and 500 pound lift bag; and (6) not indemnifying him for his expenditures and losses that he incurred by virtue of having to bring the items in his dive spread to work and use in  discharging his duties that he was either unable to retrieve after his termination, or which he retrieved but in a substantially damaged state.

200.    As the proximate result of Defendants' tortious violation of public policy, Plaintiff Zugsberger has suffered damages to be shown according to proof and is entitled to an award therefor including without limitation for: (1) the value of the lodging and meals that he would have received

if he had been put up at Tomales Bay Resort like the other employees, plus the difference between his actual commuting expense and what it would have been had he stayed at Tomales Bay Resort, together with prejudgment interest thereon; (2) the fair market value of the Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, bailout check gauge and satellite cell phone when Mr. Zugsberger first brought them to work at the Drake's Estero project, with prejudgment interest thereon; (3) the decline in the fair market value of the air rack, dive compressor, bailout bottle and 500 pound lift bag between the date he first brought them to work and the date he retrieved them from storage in their damaged state, with prejudgment interest thereon; (4) lost income and benefits, with prejudgment interest thereon; and (5) emotional and physical distress, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, and other nonpecuniary losses.

201.    Defendants' tortious violation of public policy was malicious, oppressive, fraudulent, and done with reckless and conscious indifference to Mr. Zugsberger's rights, and Mr. Zugsberger is entitled to an award of punitive damages therefor to be shown according to proof.

202.    As the further proximate result of Defendants' tortious violation of public policy, Plaintiff Zugsberger has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Plaintiff Matthew Zugsberger prays for judgment against each and every defendant as follows:

1.    For Plaintiff's First Claim for False Claims Act, judgment against Galindo Construction and Peterson as follows:

    a.    For civil penalties under 31 U.S.C. § 3729(a);

    b.    For treble damages under 31 U.S.C. § 3729(a)(1);

    c.    For double damages under 31 U.S.C. § 3729(a)(2);

    d.    For costs under 31 U.S.C. § 3729(a)(3);

    e.    For an award to the relator under 31 U.S.C. § 3730(d), including reasonable expenses, plus reasonable attorney's fees and costs;

    f.    For injunctive relief;

1        g.       For any other relief this Court deems just and proper.

2   2.       For Plaintiff's Second, Third, and Fourth Claims for Jones Act Negligence, Unseaworthiness,

3   and Maintenance, Cure, and Unearned Wages, judgment against Galindo Construction, Ronald

4   Galindo, and Doe 1 [VESSEL] as follows:

5        a.       That defendant Doe 1 [VESSEL] be held to answer to an *in rem* judgment with all

6        available *in rem* procedures; and that Plaintiff be adjudged as a holder of a preferred maritime

7        lien against the vessel;

8        b.       For judgment *in personam* against defendants Galindo Construction and

9        Ronald Galindo as follows:

10               I.       For his general damages according to proof;

11               ii.      For all expenses for health care providers according to

12               proof;

13               iii.     For all loss of income past and future according to proof;

14               iv.      For maintenance, cure, and unearned wages according to

15               proof;

16               v.       For reasonable attorneys' fees and expenses;

17               vi.      For punitive damages according to general maritime law;

18               vii.     For prejudgment interest according to general maritime

19               law;

20               viii.    For Plaintiff's costs of suit incurred herein; and

21               ix.      For any other relief this Court deems just and proper.

22  3.       For Plaintiff's Fifth Claim for Negligence, judgment against Peterson as follows:

23       a.       For his general damages according to proof;

24       b.       For all expenses for health care providers according to proof;

25       c.       For all loss of income past and future according to proof;

26       d.       For prejudgment interest according to general maritime law;

27       e.       For plaintiff's costs of suit incurred herein; and

28

1    f.    For such other and further relief as this Court deems

2    just and fair.

3    4.    For Plaintiff Zugsberger's Sixth Claim for failure to pay the minimum wage in

4    violation of Labor Code § 1194 against Defendants and Each of Them Other than Doe 1, for damages

5    to be shown according to proof, including without limitation for: (1) the minimum wage for the

6    approximately 40 hours he worked after agreeing to be an employee but before August 14, 2016, plus

7    prejudgment interest thereon, plus as liquidated damages an additional amount equal to the minimum

8    wage and prejudgment interest thereon; and (2) prejudgment interest through in or about June 2017

9    on the difference between what he was paid on his pay days while he was employed by Defendants

10   and what he would have been paid had he been paid as a Pile Driver; for civil monetary penalties

11   pursuant to PAGA to be shown according to proof; and for reasonable attorneys' fees and litigation

12   expenses to be shown according to proof;

13   5.    For Plaintiff Zugsberger's Seventh Claim for breach of contract for failure to pay all

14   wages promised against defendants T. L. Peterson, Galindo Construction, and Does 2-10, inclusive,

15   for damages to be shown according to proof, with prejudgment interest thereon, including without

16   limitation for: (1) the difference between the pay he would have received as a Diver and the pay he

17   actually received; (2) the value of the lodging and meals that he would have received if he had been

18   put up at Tomales Bay Resort like the other employees, plus the difference between his actual

19   commuting expense and what it would have been had he stayed at Tomales Bay Resort; and (3) the

20   wages and benefits he lost after November 1, 2016; and for reasonable attorneys' fees and litigation

21   expenses to be shown according to proof;

22   6.    For Plaintiff Zugsberger's Eighth Claim for failure to pay Diver pay in tortious

23   violation of public policy against Defendants T. L. Peterson, Galindo Construction, and Does 2-10,

24   inclusive, for damages to be shown according to proof, including without limitation for: (1) the

25   difference between what he was paid and what he would have been paid had he been paid as a Diver,

26   with prejudgment interest thereon; (2) emotional and physical distress, inconvenience, mental

27   anguish, loss of enjoyment of life, loss of reputation, and other nonpecuniary losses; and (3) punitive

28   damages; and for reasonable attorneys' fees and litigation expenses to be shown according to proof;

7.     For Plaintiff Zugsberger's Ninth Claim for breach of the implied covenant of good faith and fair dealing against Defendants T. L. Peterson, Galindo Construction, and Does 2-10, inclusive, for damages to be shown according to proof, including without limitation for an amount equal to the difference between what he was paid and what he would have been paid had he been paid as a Diver, with prejudgment interest thereon, and for reasonable attorneys' fees and litigation expenses;

8.     For Plaintiff Zugsberger's Tenth Claim for failure to pay overtime in violation of Labor Code §§ 1194, 510 and 1198 against Defendants and each of them other than Doe 1, for damages to be shown according to proof, including without limitation for the difference between the overtime he was paid based on his Group 3 Laborer pay and the overtime he would have been paid had he been paid as a Diver or at least as a Pile Driver, plus prejudgment interest thereon; for civil monetary penalties pursuant to PAGA to be shown according to proof; and for reasonable attorneys' fees and litigation expenses to be shown according to proof;

9.     For Plaintiff Zugsberger's Eleventh Claim for failure to provide meal periods in violation of Labor Code §§ 1198, 226.7, and 512 against Defendants and each of them other than Doe 1, for damages to be shown according to proof, including without limitation for the additional hour of pay at Mr. Zugsberger's regular rate on those days when he worked over five hours, with prejudgment interest thereon; for civil monetary penalties pursuant to PAGA to be shown according to proof; and for reasonable attorneys' fees and litigation expenses to be shown according to proof;

10.     For Plaintiff Zugsberger's Twelfth Claim for failure to authorize and permit all legally required rest periods in violation of Labor Code §§ 1198 and 226.7 against Defendants and each of them other than Doe 1, for damages to be shown according to proof, including without limitation for the additional hour of pay at Mr. Zugsberger's regular rate on those days when he worked 3.5 or more hours, with prejudgment interest thereon; for civil monetary penalties pursuant to PAGA to be shown according to proof; and for reasonable attorneys' fees and litigation expenses to be shown according to proof;

11.     For Plaintiff Zugsberger's Thirteenth Claim for failure to furnish accurate earnings statements in violation of Labor Code § 226 against Defendants and each of them other than Doe 1,

for statutory damages and penalties to be shown according to proof, for civil monetary penalties pursuant to PAGA to be shown according to proof, and for reasonable attorneys' fees and litigation expenses to be shown according to proof;

12.     For Plaintiff Zugsberger's Fourteenth Claim for violation of Labor Code §§ 201 through 203 against Defendants and each of them other than Doe 1, for damages to be shown according to proof, including without limitation for all wages owed him when he was terminated that he was not paid, with prejudgment interest thereon, and for a continuation of his wages for thirty days after his termination; for civil monetary penalties pursuant to PAGA to be shown according to proof; and for reasonable attorneys' fees and litigation expenses to be shown according to proof;

13.     For Plaintiff Zugsberger's Fifteenth Claim for violation of Labor Code § 2802 against Defendants and each of them other than Doe 1, for damages to be shown according to proof, with prejudgment interest thereon, including without limitation for: (1) the fair market value of the Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, satellite cell phone and bailout check gauge when Mr. Zugsberger first brought them to work at the Drake's Estero project; and (2) the decline in the fair market value of the air rack, dive compressor, bailout bottle and 500 pound lift bag between the date he first brought them to work and the date he retrieved them from storage in their damaged state; and for reasonable attorneys' fees and litigation expenses to be shown according to proof;

14.     For Plaintiff Zugsberger's Sixteenth Claim for conversion against Defendants and each of them other than Doe 1, for damages to be shown according to proof, including without limitation for: (1) the fair market value of the Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, satellite cell phone and bailout check gauge when Mr. Zugsberger first brought them to work at the Drake's Estero project, with prejudgment interest thereon; and (2) punitive damages;

15.     For Plaintiff Zugsberger's Seventeenth Claim for trespass to chattels against Defendants and each of them other than Doe 1, for damages to be shown according to proof, with prejudgment interest thereon, including without limitation for: (1) the decline in the fair market value of the air rack, dive compressor, bailout bottle and 500 pound lift bag between the date he first

1   brought them to work and the date he retrieved them from storage in their damaged state, with

2   prejudgment interest thereon; and (2) punitive damages;

3       16.     For Plaintiff Zugsberger's Eighteenth Claim for negligence against Defendants and

4   each of them other than Doe 1, for damages to be shown according to proof, with prejudgment

5   interest thereon, including without limitation for: (1) the fair market value of the Mustang survival

6   automatic inflatable work vest, ten 8-ton Crosby shackles, satellite cell phone and bailout check gauge

7   when Mr. Zugsberger first brought them to work at the Drake's Estero project; and (2) the decline in

8   the fair market value of the air rack, dive compressor, bailout bottle and 500 pound lift bag between

9   the date he first brought them to work and the date he retrieved them from storage in their damaged

10  state;

11      17.     For Plaintiff Zugsberger's Nineteenth Claim for violation of the Unfair Competition

12  Law, Business and Professions Code § 17200, et seq., against Defendants and each of them other than

13  Doe 1, for an award of restitution to be shown according to proof, including without limitation, of:

14  (1) the minimum wage for the approximately 40 hours he worked after agreeing to be an employee

15  but before August 14, 2016, plus prejudgment interest thereon; (2) prejudgment interest through in

16  or about June 2017 on the difference between what he was paid on his pay days while he was

17  employed by Defendants and what he would have been paid had he been paid as a Pile Driver; (3)

18  the difference between the pay he would have received as a Diver and the pay he actually received,

19  plus prejudgment interest thereon; (4) the value of the lodging and meals that he would have received

20  if he had been put up at Tomales Bay Resort like the other employees, plus the difference between

21  his actual commuting expense and what it would have been had he stayed at Tomales Bay Resort,

22  together with prejudgment interest thereon; (5) the difference between the overtime he was paid based

23  on Group 3 Laborer pay and the overtime he should have been paid as a Diver or at a bare minimum

24  as a Pile Driver, plus prejudgment interest thereon; (6) an additional hour of pay at his regular rate

25  for each day that he worked over five hours for not being provided a legally compliant meal period

26  on those days, plus prejudgment interest thereon; (7) a second additional hour of pay at his regular

27  rate for each day that he worked 3.5 or more hours for not being authorized and permitted to take all

28  legally required rest periods on those days, plus prejudgment interest thereon; (8) the fair market value

of the Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, bailout check gauge and satellite cell phone when he first brought them to work at the Drake's Estero project, plus prejudgment interest thereon; and (9) the decline in the fair market value of the air rack, dive compressor, bailout bottle and 500 pound lift bag between the date he first brought them to work and the date he retrieved them from storage in their damaged state, plus prejudgment interest thereon; and for reasonable attorneys' fees and litigation expenses to be shown according to proof;

18.     For Plaintiff Zugsberger's Twentieth through Twenty-Second Claims for Fraud and Deceit by Intentional Misrepresentation, Fraud and Deceit by Concealment, and Fraud and Deceit by False Promise, against Defendants T. L. Peterson, Galindo Construction, Don Ron Galindo and Does 2-10, inclusive, for damages to be shown according to proof, including without limitation for: (1) lost income and benefits with prejudgment interest thereon; (2) emotional and physical distress, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, and other nonpecuniary losses; and (3) punitive damages;

19.     For Plaintiff Zugsberger's Twenty-Third Claim for violation of Labor Code § 970 against Defendants T. L. Peterson, Galindo Construction, Don Ron Galindo and Does 2-10, inclusive, for double damages to be shown according to proof, including without limitation for: (1) lost income and benefits with prejudgment interest thereon; and (2) emotional and physical distress, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, and other nonpecuniary losses;

20.     For Plaintiff Zugsberger's Twenty-Fourth Claim for Negligent Misrepresentation and Deceit, against Defendants T. L. Peterson, Galindo Construction, Don Ron Galindo and Does 2-10, inclusive, for damages to be shown according to proof, including without limitation for lost income and benefits with prejudgment interest thereon;

21.     For Plaintiff Zugsberger's Twenty-Fifth Claim for violation of Labor Code §§ 1102.5 and 98.6 against defendants T. L. Peterson, Galindo Construction, and Does 2-10, inclusive, for damages to be shown according to proof, including without limitation for: (1) the value of the lodging and meals that he would have received if he had been put up at Tomales Bay Resort like the other employees, plus the difference between his actual commuting expense and what it would have been

had he stayed at Tomales Bay Resort, together with prejudgment interest thereon; (2) the fair market value of the Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, bailout check gauge and satellite cell phone when Mr. Zugsberger first brought them to work at the Drake's Estero project, with prejudgment interest thereon; (3) the decline in the fair market value of the air rack, dive compressor, 500 pound lift bag and bailout bottle between the date he first brought them to work and the date he retrieved them from storage in their damaged state, with prejudgment interest thereon; (4) lost income and benefits, with prejudgment interest thereon; (5) emotional and physical distress, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, and other nonpecuniary losses; and (6) punitive damages; for a $10,000 civil monetary penalty pursuant to subdivision (b)(3) of Labor Code § 98.6 for each violation of Labor Code § 98.6; for civil monetary penalties pursuant to PAGA to be shown according to proof; and for reasonable attorneys' fees and litigation expenses to be shown according to proof;

22.    For Plaintiff Zugsberger's Twenty-Sixth Claim for violation of Labor Code §§ 6310 and 98.6 against defendants T. L. Peterson, Galindo Construction, and Does 2-10, inclusive, for damages to be shown according to proof, including without limitation for lost wages and benefits, plus prejudgment interest thereon; for a $10,000 civil monetary penalty pursuant to subdivision (b)(3) of Labor Code § 98.6 for each violation of Labor Code § 98.6; for civil monetary penalties pursuant to PAGA to be shown according to proof; and for reasonable attorneys' fees and litigation expenses to be shown according to proof;

23.    For Plaintiff Zugsberger's Twenty-Seventh Claim for violation of 41 U.S.C. § 4712 against defendants T. L. Peterson, Galindo Construction, and Does 2-10, inclusive, for damages to be shown according to proof, including without limitation for: (1) the value of the lodging and meals that he would have received if he had been put up at Tomales Bay Resort like the other employees, plus the difference between his actual commuting expense and what it would have been had he stayed at Tomales Bay Resort, together with prejudgment interest thereon; (2) the fair market value of the Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, bailout check gauge and satellite cell phone when Mr. Zugsberger first brought them to work at the Drake's Estero project, with prejudgment interest thereon; (3) the decline in the fair market value of the air rack, dive

compressor, bailout bottle and 500 pound lift bag between the date he first brought them to work and the date he retrieved them from storage in their damaged state, with prejudgment interest thereon; (4) lost income and benefits, with prejudgment interest thereon; and (5) emotional and physical distress, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, and other nonpecuniary losses; and for reasonable attorneys' fees and litigation expenses to be shown according to proof;

24.     For Plaintiff Zugsberger's Twenty-Eighth Claim for violation of 31 U.S.C. § 3730, subd. (h), against defendants T. L. Peterson, Galindo Construction, and Does 2-10, inclusive, for damages to be shown according to proof, with prejudgment interest thereon, including without limitation for: (1) the value of the lodging and meals that he would have received if he had been put up at Tomales Bay Resort like the other employees, plus the difference between his actual commuting expense and what it would have been had he stayed at Tomales Bay Resort, together with prejudgment interest thereon; (2) the fair market value of the Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, bailout check gauge and satellite cell phone when Mr. Zugsberger first brought them to work at the Drake's Estero project; (3) the decline in the fair market value of the air rack, dive compressor, bailout bottle and 500 pound lift bag between the date he first brought them to work and the date he retrieved them from storage in their damaged state; and (4) lost income and benefits, with the amount of income and benefits he loses through the date of trial being doubled; and for reasonable attorneys' fees and litigation expenses to be shown according to proof;

25.     For Plaintiff Zugsberger's Twenty-Ninth Claim for retaliatory tortious violation of public policy against defendants T. L. Peterson, Galindo Construction, and Does 2-10, inclusive, for damages to be shown according to proof, with prejudgment interest thereon, including without limitation for: (1) the value of the lodging and meals that he would have received if he had been put up at Tomales Bay Resort like the other employees, plus the difference between his actual commuting expense and what it would have been had he stayed at Tomales Bay Resort, together with prejudgment interest thereon; (2) the fair market value of the Mustang survival automatic inflatable work vest, ten 8-ton Crosby shackles, bailout check gauge and satellite cell phone when Mr. Zugsberger first brought them to work at the Drake's Estero project, with prejudgment interest thereon; (3) the decline in the fair market value of the air rack, dive compressor, bailout bottle and

1  500 pound lift bag between the date he first brought them to work and the date he retrieved them from

2  storage in their damaged state, with prejudgment interest thereon; (4) lost income and benefits, with

3  prejudgment interest thereon; (5) emotional and physical distress, inconvenience, mental anguish, loss

4  of enjoyment of life, loss of reputation, and other nonpecuniary losses; and (6) punitive damages; and

5  for reasonable attorneys' fees and litigation expenses to be shown according to proof;

6        26.     For costs of suit; and

7        27.     For such other and further relief as this Court deems just and proper.

8  DATED: March 30, 2018

9                    BRISCOE IVESTER & BASEL LLP

10                   ANDERSON CAREY WILLIAMS & NIEDWZSKI, PLLC

11                   HIGHMAN & HIGHMAN
                  A PROFESSIONAL LAW ASSOCIATION

12

13                   By */s/ Peter Prows*

14                   Peter Prows
                  Attorneys for Plaintiff and Relator Matthew Zugsberger

15               DEMAND FOR JURY TRIAL

16     Plaintiff and Relator Matthew Zugsberger hereby demands a jury trial.

17 DATED: March 30, 2018

18                   BRISCOE IVESTER & BASEL LLP

19                   ANDERSON CAREY WILLIAMS & NIEDWZSKI, PLLC

20                   HIGHMAN & HIGHMAN
                  A PROFESSIONAL LAW ASSOCIATION

21

22                   By */s/ Peter Prows*

23                   Peter Prows
                  Attorneys for Plaintiff and Relator Matthew Zugsberger

24

25

26

27

28